## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
| | |
|---|---|
| In re | : |
| | : |
| Smurfit-Stone Container Corporation, et al., | : |
| | : |
| Debtors. | : |

Chapter 11

Case No. 09-10235 (BLS)
(Jointly Administered)

**Re: Docket No. 2624**

---------------------------------------------------x

### MARINER INVESTMENT GROUP, LLC'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Mariner Investment Group, LLC ("**Mariner**"), by and through undersigned counsel, respectfully submits this memorandum in opposition to the Debtors' Motion to Compel Production of Documents, dated November 6, 2009 (the "**Motion**"), in connection with Mariner's Motion for an Order Appointing an Official Committee of Equity Security Holders, dated August 20, 2009 (the "**Equity Motion**"). In opposition to the Motion, Mariner respectfully represents as follows:

### RELIEF REQUESTED

1.     The Debtors do not want to litigate the Equity Motion on its merits. Instead, they continue to refuse to produce the most probative documents concerning their solvency, while at the same time demanding that Mariner produce countless documents having no conceivable relevance to the Equity Motion. In addition, despite the Court's ruling on their Cross-Motion last week, the Debtors again ask the Court to enter an onerous discovery schedule designed to tilt the playing field overwhelmingly in their favor. The Court should put an end to the Debtors' games, deny their Motion, and direct the Debtors to comply with the Court's ruling on Mariner's motion to compel.

2.     As discussed in more detail below, within 8 days of service of the Debtors' first document request, Mariner searched its files (*including e-mails*) and produced over

3,400 pages of responsive documents, including its own valuation model for the Debtors. In sharp contrast, 23 days after service of Mariner's first document request, the Debtors continue — despite the Court's ruling on Mariner's motion to compel — to refuse, among other things, to:

- conduct *any* search for responsive emails;

- produce *any* drafts of a plan or disclosure statement on the ground of privilege;

- produce *any* current merger and acquisition materials on the ground of "business strategy" privilege; and

- produce *any* documents in Lazard's possession on the ground that Lazard has not prepared *any* model, recovery analysis or valuation analysis for the Debtors.

The Debtors' conduct is inconsistent with — if not in outright contravention of — the Court's discovery ruling last week. Moreover, it is inconceivable in light of the Debtors' representation to the Court that their plan negotiations are well under way that all plan and disclosure statement drafts are privileged and that their financial advisor has not yet prepared a valuation analysis, a model of the company's future performance or any analysis of potential recovery. If this is in fact the state of play, on what basis have the Debtors concluded that they are hopelessly insolvent?

3.    On October 26, 2009, the Debtors served a Request for the Production of Documents on Mariner and other equity holders (the "**Debtors' Document Request**"). On November 3, 2009, Mariner responded with its full production as well as its responses and objections. A true and correct copy of Mariner's Responses and Objections to the Debtors' Document Request ("**Mariner's Responses and Objections**") is annexed hereto as Exhibit A.

4.    Following receipt of Mariner's Responses and Objections, the Debtors requested that the parties meet and confer regarding Mariner's production. In stark contrast to the meet and confer process that followed Mariner's Request for Production of Documents by

the Debtors ("**Mariner's Document Request**"), which consisted of numerous phone calls and definitive refusals to produce before Mariner sought the Court's intervention, the parties had two brief calls on November 5 and November 6, 2009. The November 6 meet and confer ended with a representation from Debtors' counsel that discussions about the scope of Mariner's production would continue, particularly with regard to expert discovery. Indeed, the Debtors' counsel proposed an expert discovery schedule that Mariner's counsel advised it would consider and to which it would provide a response. Without any indication whatsoever, however, the Debtors filed the Motion late Friday evening, seeking a hearing on Tuesday, November 10.

5.     Apart from the procedural impropriety of the Debtors' Motion, its substance lacks merit as well. The issue before the Court on the Equity Motion is a narrow one: are the Debtors hopelessly insolvent, such that there is no likelihood of a meaningful recovery for equity. Despite that narrow issue — and despite refusing to produce the most probative documents on their solvency — the Debtors insist on blunderbuss discovery from Mariner, demanding that Mariner conduct searches the Debtors refuse to conduct themselves and that it produce patently irrelevant documents. Specifically, the Debtors' Document Request contains a number of irrelevant requests that are so broad as to require a comprehensive search of every e-mail ever received or sent by Mariner -- which number in the millions -- and provides *no time limitation whatsoever*. Those requests include, without limitation, the following:

- "All Communications among any Equity Security Holder relating to any Debtor";

- "All documents provided to or from one Equity Security Holder to any other Equity Security Holder that relates to any Debtors"; and

- "All communications among any Equity Security Holder and any unnamed Equity Security Holder relating to any Debtor."

- "All documents provided to or from any Equity Security Holder and any unnamed Equity Security Holder relating to any Debtor."

(Debtors' Document Request Nos. 7-10.) Besides being almost limitless in scope, Requests Nos. 7-10 are wholly irrelevant to the Equity Motion. The Debtors' contention that the "value [equity] holders assign to their interests … could lead to the discovery of admissible evidence" is flat wrong. (Motion at ¶ 4.) The Equity Motion has nothing to do with how equity holders subjectively value their equity interests — the issue is whether the Debtors are hopelessly insolvent or whether there exists a likelihood of a meaningful recovery for equity holders. Similarly, information regarding Mariner's trading history, which the Debtors' claim is "probative" for the same reasons, has nothing to do with the issues raised by the Equity Motion. (Motion at ¶ 3.)

6. Despite the irrelevance of documents responsive to Document Requests Nos. 7-10, Mariner made a good faith effort to produce responsive documents by searching the files of the custodian most likely to have responsive documents. Mariner searched the electronic and hard copy files of the investment professional who maintains Mariner's files on the Debtors. He is the only investment professional at Mariner who maintains those files and that information, and he is also the member of the Mariner team responsible for developing and maintaining Mariner's valuation model of the Debtors. All of that individual's files relating to the Debtors — including the "deal file," valuation model and his emails were produced. Mariner objected only to a general search of the entire firm's emails as unduly burdensome, particularly given the patent lack of relevance of these requests to the issues before the Court on the Equity Motion.[1]

---

[1] The Debtors make much of the fact that the Mariner only searched one "deal file" maintained by one custodian. Mariner is a fund with 10 investment professionals, only one of whom maintains the electronic and paper files related to the Debtors, including a model and valuation analyses. Thus, instead of focusing on the number of individuals who follow the Debtors at Mariner, perhaps the Debtors should spend more time assessing why *nobody* among the thousands of employees at Smurfit-Stone has a single valuation or recovery model.

7.     Mariner's measured response to the Debtors' document requests stands in marked contrast to the Debtors' response to Mariner's requests. Not only have the Debtors refused to search for a *single* email, they have also taken the position that, because Mariner advised the Court that the documents it was seeking were likely sitting on someone's desk, they are not obligated to look beyond the desktop for responsive documents. As a result, the Debtors have refused to search the Debtors' or Lazard's files — paper or electronic (See November 5, 2009 Kapnick Letter, annexed hereto as Exhibit B.). Indeed, the Debtors have not produced a single email or any working model of the Debtors' value. Moreover, though they claim to be in the midst of extensive plan negotiations, the Debtors have represented to Mariner that Lazard, their financial advisor, has not modeled the Debtors' value, nor created forecasts of their future performance, and on that basis have produced *nothing* from Lazard's files. (See 11/6/09 Kapnick Letter (Ex. B).)[2]

8.     Despite the Court's ruling last week, the Debtors continue to refuse to produce particularly probative documents. For example, they refuse to provide materials related to any ongoing M&A activity, even on a professionals-eyes-only basis, or any draft plans or disclosure statements, contending they are privileged. The Debtors also have yet to provide more than cursory information on the impact of government subsidy programs, such as the black liquor program, on their business or information on how the Debtors intend to address their pension plans and related claims. By their own admission, even this limited production is not yet complete.

---

[2]     The Debtors make this representation notwithstanding Lazard's most recent fee application, dated October 16, 2009 and covering July 2009, which states that "Lazard provided independent analysis of competitors' financial positions and updates on general capital markets activities" and that "Lazard spent significant time and resources creating presentations and participating in discussions … about the Debtors' operations, financial projections, claims analysis and other key events." (Lazard 10/16/09 Fee App. at 6 (annexed hereto as Ex. C).)

9.      At the same time they continue to stonewall Mariner, the Debtors insist on requiring Mariner to commit to preparing a formal expert report and to a one-sided expert discovery schedule.  During the November 6 meet and confer, counsel for Mariner explained that Mariner was not in a position to make any commitment regarding the form of its expert's testimony until the Debtors had completed their production and Mariner had had an opportunity to review it.  Mariner agreed to consider the Debtors' request for an expert report and an expert discovery schedule and get back to the Debtors.  The Debtors gave no indication that they would be filing the Motion, and, indeed, seemed willing to work out a consensual resolution of the expert discovery issues.  For that reason, Mariner submits the Motion is premature.

10.      On the merits, the schedule the Debtors' propose is highly prejudicial, particularly given the Debtors' delays and failure to complete production of the documents this Court ordered them to produce.  As Mariner has repeatedly emphasized to the Debtors, this is a contested matter, and the expert disclosure rules contained in Federal Rule of Civil Procedure 26(a)(2) do not apply.  See Federal Rule of Bankruptcy Procedure 9014(c).  Indeed, the Notes of the Advisory Committee on the 2004 amendments to Rule 9014 emphasize that the "typically short time between the commencement and resolution of most contested matters makes the mandatory disclosure provisions of Rule 26 ineffective."

11.      Here, expert reports would be burdensome and unnecessary.  Mariner has continually assured the Debtors that its expert would be available for deposition prior to the hearing, and they do not contend otherwise.  The information any expert retained by Mariner would use to form his or her opinion is either publicly available or in the Debtors' possession.  Despite that fact, the Debtors insist that Mariner produce a formal expert report by Wednesday, November 12, and that the Debtors have an opportunity to depose Mariner's expert *before* they

produce their own expert's report. That schedule is unnecessary, unfair and unworkable, for myriad reasons. First, the Debtors continue to withhold probative documents with respect to their solvency. Second, once the Debtors comply with their discovery obligations, it is likely that Mariner will need to take a deposition of the Debtors and Lazard *before* its expert is in a position to formulate an opinion as to the Debtors' solvency and the likelihood of a meaningful recovery for equity in these cases. Third, to the extent the parties exchange expert reports, depositions of the experts should occur *after* both parties have exchanged expert reports. Given the December 4 Hearing date, and the fact that the Debtors (unlike Mariner) already have all information relevant to their solvency in their possession, imposition of the Debtors' discovery schedule on the parties would serve no purpose other than to disadvantage Mariner.

12.     Finally, Mariner would be remiss if it did not address the Debtors' unfounded and unsupportable accusation that Mariner is using the information obtained in connection with the Equity Motion for the purposes of insider trading. (Motion at ¶ 3, n.2.) Mariner and its counsel, Willkie Farr & Gallagher LLP and Cross & Simon L.L.C., understand their obligations under the securities laws and regard them with the utmost seriousness. Mariner has at all times abided by the Protective Order to which it agreed, and has offered to maintain any information provided by the Debtors as professionals-eyes-only if the Debtors request such treatment. For the Debtors to assert otherwise reeks of a highly unprofessional, not to mention baseless, attempt at intimidation and harassment that has no place in this dispute.

## CONCLUSION

For the reasons stated herein, Mariner respectfully requests that the Court deny the Debtors' Motion in its entirety.

Dated: November 8, 2009

CROSS & SIMON L.L.C.

By: _Kevin S. Mann_____
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
913 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
kmann@crosslaw.com

- and -

WILLKIE FARR & GALLAGHER LLP

Rachel C. Strickland
Brian E. O'Connor
Shaunna D. Jones
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Co-counsel to Mariner Investment Group, LLC*