UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SMURFIT-STONE CONTAINER CORPORATION, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10235 (BLS)<br><br>Jointly Administered<br><br>Hearing Date: January 14, 2010 at 11:00 a.m. (ET)<br>Objection Deadline: January 7, 2009 at 4:00 p.m. (ET) |

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), further extending the exclusive periods during which only the Debtors may (i) file a chapter 11 plan of reorganization and (ii) solicit acceptances of such plan of reorganization. In support of this Motion, the Debtors respectfully state as follows:

### INTRODUCTION

Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which the debtor has the exclusive

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Smurfit-Stone Container Corporation (1401), Smurfit-Stone Container Enterprises, Inc. (1256), Calpine Corrugated, LLC (0470), Cameo Container Corporation (5701), Lot 24D Redevelopment Corporation (6747), Atlanta & Saint Andrews Bay Railway Company (0093), Stone International Services Corporation (9630), Stone Global, Inc. (0806), Stone Connecticut Paperboard Properties, Inc. (8038), Smurfit-Stone Puerto Rico, Inc. (5984), Smurfit Newsprint Corporation (1650), SLP Finance I, Inc. (8169), SLP Finance II, Inc. (3935), SMBI Inc. (2567), Smurfit-Stone Container Canada Inc. (3988), Stone Container Finance Company of Canada II (1587), 3083527 Nova Scotia Company (8836), MBI Limited/Limitée (6565), Smurfit-MBI (1869), 639647 British Columbia Ltd. (7733), B.C. Shipper Supplies Ltd. (7418), Specialty Containers Inc. (6564), SLP Finance General Partnership (9525), Francobec Company (7735), and 605681 N.B. Inc. (1898). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 222 North LaSalle Street, Chicago, Illinois 60601.

right to file a plan of reorganization (the "Exclusive Filing Period"). Furthermore, section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan of reorganization within the Exclusive Filing Period, it has an exclusive period of 180 days from the commencement of the chapter 11 case to solicit acceptances of and confirm such a plan of reorganization (the "Exclusive Solicitation Period" and together with the Exclusive Filing Period, the "Exclusivity Periods"). The initial Exclusive Filing Period in these chapter 11 cases extended through May 26, 2009, while the initial Exclusive Solicitation Period extended through July 24, 2009.

On May 1, 2009, the Debtors filed their Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 855] (the "First Extension Motion"). On May 18, 2009, the Court approved the relief requested in the First Extension Motion when it entered the Order Pursuant to 11 U.S.C. § 1121(d) Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 954] (the "First Extension Order"), pursuant to which the Exclusive Filing Period was extended through and including September 23, 2009 and the Exclusive Solicitation Period was extended through and including November 23, 2009.

On August 24, 2009, the Debtors filed their Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 1715] (the "Second Extension Motion"). On September 9, 2009, the Court approved the relief requested in the Second Extension Motion when it entered the Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof

[Docket No. 1891] (the "Second Extension Order"), pursuant to which the Exclusive Filing Period was extended through and including January 21, 2010 (the "Current Filing Period") and the Exclusive Solicitation Period was extended through and including March 23, 2010 (the "Current Solicitation Period" and together with the Current Filing Period, the "Current Exclusivity Periods").

Section 1121(d) of the Bankruptcy Code permits the Court to extend the exclusivity periods "for cause." By this Motion, the Debtors request that (i) the Current Filing Period be further extended by one hundred twenty (120) days, through and including May 21, 2010, and (ii) the Current Solicitation Period also be further extended by one hundred twenty (120) days, through and including July 21, 2010, pursuant to section 1121(d) of the Bankruptcy Code. For the reasons set forth herein, the Debtors submit that ample "cause" exists to grant such extensions.

## STATUS OF THE CASE AND JURISDICTION

1. On January 26, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On January 27, 2009, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On February 5, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006(b).

## BACKGROUND OF THE DEBTORS

5. Smurfit-Stone Container Corporation ("SSCC") is a holding company that conducts its business operations through its wholly-owned subsidiary Smurfit-Stone Container Enterprises, Inc. ("SSCE"), the surviving entity from the November 1998 merger of Jefferson Smurfit Corporation and Stone Container Corporation. SSCE is the direct or indirect parent company of all of the other Debtors and their respective non-debtor affiliates (collectively with SSCC and SSCE, the "Company"). The Company is one of the leading integrated manufacturers of paperboard and paper-based packaging in North America and is one of the world's largest recyclers of paper. The Company sells a broad range of paper-based packaging products, including containerboard, corrugated containers, kraft paper, and point of purchase displays, to a broad range of manufacturers of industrial and consumer products.

6. The Company operates more than 150 manufacturing facilities that are primarily located in the United States and Canada, including paper mills, container plants, wood harvesting facilities and reclamation plants. The Company employs approximately 18,000 employees.

7. The Company's financial performance depends primarily upon the market demand for its products and the prices that it receives for such products. The recent downturn in the global economy resulted in an unprecedented decline in demand for the Company's products, leading to increased inventory levels and downward pressure on the Company's operating

4
DB02:9078575.1                                                                                                    068063.1001

income. At the same time, substantial price competition and volatility in the pulp and paper industry resulted in decreased prices for the Company's products which, coupled with the Company's leveraged financial position and the recent volatility in energy prices and the cost of raw materials, adversely impacted the Company's financial performance. In addition, recent and dramatic changes in the capital markets adversely impacted the Company's prospects for refinancing its revolving credit and securitization facilities. Because of these factors, the Debtors found it necessary to commence these chapter 11 cases.

8. On the Petition Date, following the commencement of these chapter 11 proceedings, certain of the Debtors – including Smurfit-Stone Container Canada Inc., a wholly-owned subsidiary of SSCE, and certain of its affiliates (collectively, the "Cross-Border Debtors")[2] – applied for protection from their creditors in Canada pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA") or other insolvency laws in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"). On the Petition Date, the Canadian Court issued an order that, *inter alia*, imposed a stay of all proceedings (the "CCAA Stay") against the Cross-Border Debtors and their property in Canada.

## SIGNIFICANT POST-PETITION DEVELOPMENTS

9. The Debtors have been operating under the protections of the Bankruptcy Code for approximately 11 months. During this time, the Debtors, with the assistance of their professional advisors, have made tremendous strides in stabilizing their business operations.

---

[2] The Cross-Border Debtors are Smurfit-Stone Container Canada Inc., Stone Container Finance Company of Canada II, 3083527 Nova Scotia Company, MBI Limited/Limitée, Smurfit-MBI, 639647 British Columbia Ltd., B.C. Shipper Supplies Ltd., Specialty Containers Inc., SLP Finance General Partnership, Francobec Company, and 605681 N.B. Inc. Smurfit-MBI and SLP Finance General Partnership did not apply for protection under the CCAA but did receive certain relief under the CCAA Initial Order, including all protections of the CCAA Stay. In addition, Smurfit-MBI, SLP Finance General Partnership and the other Cross-Border Debtors sought and received recognition of their respective Chapter 11 Cases in the Canadian Court under Section 268 of the Bankruptcy and Insolvency Act, R.S.C. 1985 c. B-3.

Indeed, the Debtors believe they are in the final, and undoubtedly critical, stages of their chapter 11 cases.

11. The Debtors' hard work in these chapter 11 cases has lead to the filing of a plan of reorganization and disclosure statement. On December 1, 2009, the Debtors filed their Joint Plan of Reorganization for Smurfit-Stone Container Corporation and its Debtor Subsidiaries and Plan of Compromise and Arrangement for Smurfit-Stone Container Canada Inc. and Affiliated Canadian Debtors [Docket No. 2914]. Also, on December 1, 2009, the Debtors filed their Disclosure Statement for the Joint Plan of Reorganization for Smurfit-Stone Container Corporation and its Debtor Subsidiaries [Docket No. 2915]. On December 22, 2009, the Debtors filed a revised Joint Plan of Reorganization for Smurfit-Stone Container Corporation and its Debtor Subsidiaries and Plan of Compromise and Arrangement for Smurfit-Stone Container Canada Inc. and Affiliated Canadian Debtors [Docket No. 3372] (the "Plan of Reorganization") and a revised disclosure statement [Docket No. 3374] (the "Disclosure Statement"). The Debtors scheduled a hearing to approve the Disclosure Statement on January 29, 2010.

11. In developing the Plan of Reorganization, the Debtors engaged their major creditor constituencies, including the Committee, an ad-hoc committee of holders of the Debtors' unsecured bond debt, the Monitor in the Canadian Proceedings and the prepetition and post-petition lenders. The Debtors have maintained a continuous, cooperative and responsive relationship with those constituencies throughout the bankruptcy process. Although the Debtors are confident that the Disclosure Statement will be approved by the Court and that the Plan of Reorganization is confirmable in its current form, the Debtors need the flexibility and protections afforded by the requested extension of exclusivity in order to focus on confirming the Plan of Reorganization without the complications caused by potentially competing plans and to maintain

6
DB02:9078575.1                                                                                                                                  068063.1001

the ability to address issues that may arise through filing modifications or amendments to the Plan of Reorganization.

12. In addition to developing and negotiating the Plan of Reorganization, during the nearly 11 months leading up to the filing of the Plan of Reorganization and Disclosure Statement, the Debtors worked tirelessly with their advisors to restructure and stabilize their operations. Extended treatment of the Debtors' efforts can be found in the Disclosure Statement, the First Extension Motion and the Second Extension Motion, but the highlights generally include: (i) obtaining significant "first day" and "second day" relief, (ii) obtaining final approval of a debtor-in-possession financing facility of up to $750 million and reaching agreements on the consensual use of cash collateral, (iii) conducting meetings with and providing substantial information to key creditor constituencies, including the Committee, (iv) coordinating with the Cross-Border Debtors, Canadian professionals and the Canadian Court regarding the CCAA proceedings and implementing a cross-border insolvency protocol, (v) implementing rigorous procedures for trading in SSCC's common and preferred stock, (vi) preparing and filing schedules of assets and liabilities and statements of financial affairs for twenty-five (25) individual Debtors, (vii) with the Committee's consent and support, obtaining authorization to implement their severance plan and a short-term and long-term incentive plan for certain of their employees, (viii) engaging in numerous litigated matters and adversary proceedings in the Bankruptcy Court (ix) filing seventeen motions seeking authority to reject certain executory contracts and unexpired leases, and obtaining this Court's approval to reject hundreds of such contracts and leases, (x) obtaining authority to assume approximately 120 unexpired leases of non-residential real property, (xi) obtaining an order approving procedures for the disposition of certain de minimis assets, and executing approximately 54 sales of equipment, trailers and other

assets for under $500,000[3] and obtaining authority to sell approximately 10 assets for between $500,000 and $5 million, (xii) initiating the claims reconciliation process and filing numerous omnibus objections to over 1300 claims, (xiii) litigating a motion to form an equity committee and (xiv) working diligently on a "go forward" business plan to support the formulation of the Plan of Reorganization.

## ANTICIPATED PLAN DEVELOPMENTS GOING FORWARD

13.  Going forward, the Debtors will be substantially focused on the approval of their Disclosure Statement and ultimately, the confirmation of their Plan of Reorganization. During such time, the Debtors and their advisors will also continue to devote substantial time and efforts to continuing to manage the day-to-day activity of the Debtors and their chapter 11 cases. Because the Debtors filed their Plan of Reorganization, it is critical that they be able to solicit votes for, and ultimately confirm, such Plan of Reorganization without the distraction of competing plans of reorganization. As mentioned above, the Debtors have set a hearing on the Disclosure Statement for January 29, 2010 and the Debtors currently anticipate a confirmation hearing occurring during the month of April 2010.

## RELIEF REQUESTED

14.  By this Motion, the Debtors respectfully request, pursuant to section 1121(d) of the Bankruptcy Code, that (i) the Current Filing Period be further extended through and including May 21, 2010 and (ii) the Current Solicitation Period be further extended through and including July 21, 2010. The Debtors further request that such extensions be without prejudice to the Debtors' right to seek additional extensions of the Current Exclusivity Periods.

---

[3] This figure is current through the Debtors' Quarterly Report of De Minimis Asset Sales From July 1, 2009 Through September 30, 2009 [Docket No. 2542]. Since such time, the Debtors' have consummated additional sales of de minimis assets for under $500,000 which will be reported in the Debtors' next quarterly report.

## BASIS FOR RELIEF REQUESTED

### (i) Section 1121(d) of the Bankruptcy Code Authorizes the Court to Extend the Current Exclusivity Periods "For Cause"

15. The objective of a chapter 11 reorganization case is the negotiation, formulation, development, confirmation and consummation of a confirmable plan of reorganization, and it is the intention of the Debtors to achieve that objective. The exclusive periods under section 1121(d) are intended to afford the debtor a full and fair opportunity to formulate and propose such a plan of reorganization and to solicit acceptances thereof without the disruption that might be caused by the filing of competing plans of reorganization by non-debtor parties. In order to provide the debtor with such a full and fair opportunity, section 1121(d) allows the court to extend the debtor's exclusive periods for "cause":

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

16. It is well established that the decision to extend a debtor's exclusive periods is committed to the sound discretion of the court and should be based upon the facts and circumstances of a particular case. See First Am. Bank of New York v. Southwest Gloves and

Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); 203 N. LaSalle Street P'ship v. Bank of Am., N.A., 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); In re Mid-State Raceway, Inc., 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); In re Reetz, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance. See In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Such legislative history indicates that Congress did not intend that the 120- and 180-day exclusive periods be a hard and fast limit. See Amko Plastics, Inc., 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [section 1121(d)] is flexibility"). Rather, Congress intended that the debtor's exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate and draft a viable plan without the disruptions that would occur with the filing of competing plans of reorganization. See Geriatrics Nursing Home v. First Fidelity Bank, N.A., 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business."). Further, Congress recognized that often a 120-day exclusive period will not afford a debtor sufficient time to formulate and negotiate a plan of reorganization:

> [t]he court is given the power, though, to increase . . . the 120-day period depending on the circumstances of the case. [T]he bill allows the flexibility for individual cases that is not available today. For example, if an unusually large company were to seek reorganization under chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.

10

DB02:9078575.1 068063.1001

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (emphasis added) (footnotes omitted); see also In re Amko Plastics, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of ... [section 1121(d)] is flexibility").

### (ii) Cause Exists to Extend the Current Exclusivity Periods in These Chapter 11 Cases

17. When determining whether cause exists for an extension of a debtor's exclusive periods, courts rely on a variety of factors, each of which may provide sufficient grounds for extending the periods. Factors considered by the courts in making such a determination include: (a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist. See, e.g., Cont'l Cas. Co. v. Burns & Roe Enters., Inc., 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989); In re R.G. Pharmacy, Inc., 374 B.R. 484, 487 (Bankr. D. Conn. 2007); In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re Central Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re Dow Corning Corp., 208 B.R. 661, 665-66 (Bankr. E.D. Mich. 1997); In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Grand Traverse Dev. Co. Ltd. P'ship, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987). Each factor that is relevant to these cases supports the relief requested herein.

18.     The Size and Complexity of the Cases. The Debtors' chapter 11 cases qualify as "large and complex" by any objective measure. These jointly-administered cases consist of twenty-five (25) individual Debtors operating one of the leading paperboard and paper-based packaging manufacturers in North America, with significant cross-border operations and a complex capital structure. According to the Debtors' most recent operating report, for the period ending October 31, 2009, the Debtors had over $5 billion in assets. Indeed, the size and complexity of the Debtors' cases is reflected in much of what has transpired in these proceedings during the last 11 months. As discussed above, the Debtors and their professional advisors spent considerable time managing the day to day operations of the Debtors' business, chapter 11 cases and related CCAA proceedings, all while developing the Plan of Reorganization. A review of such Plan of Reorganization and related Disclosure Statement makes it apparent that these chapter 11 cases are highly complex.

19.     Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive period to file a plan and solicit acceptances of such a plan. See H.R. No. 95-595, at 231-232, 406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement"); see also In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods"). Here, the size and complexity of the Debtors' cases support the requested additional extension of the Current Exclusivity Periods.

20. <u>The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information</u>. Although the Debtors have already filed their Plan of Reorganization and Disclosure Statement, the Debtors will continue to work with the Committee and their other creditor constituencies during the solicitation period in ultimately confirming the Plan of Reorganization. Additionally, the Debtors will continue their claims reconciliation process. The requested extension of the Current Exclusivity Periods will allow this process to continue in a focused and efficient manner.

21. <u>The Existence of Good Faith Progress Toward Reorganization</u>. The Debtors have made tremendous efforts in reorganizing their business under the chapter 11 and CCAA rubrics. In the first few months of these cases, the Debtors focused much of their time and resources towards minimizing the disruption of the Debtors' business operations caused by the events leading up to and arising as a result of the commencement of these cases. The Debtors next turned to developing their long-term operational plan. The Debtors worked with the Committee and their other creditor constituencies each step of the way by keeping open lines of communication and having face-to-face meetings. The Debtors have also actively undertaken their claims reconciliation process and will continue to do so in the future. Ultimately, the Debtors have filed a Plan of Reorganization and are working expeditiously to confirm it. The Debtors are not seeking the extension to delay administration of the chapter 11 cases or to exert pressure on their creditors. To the contrary, this request is intended to maintain a framework conducive to an orderly, efficient and cost-effective confirmation process.

22. <u>The Debtors Are Paying Their Debts as They Come Due</u>. Courts considering whether to extend a debtor's exclusive periods may also assess whether the debtor is paying its debts when they come due. See <u>In re McLean Indus.</u>, 87 B.R. 830, 834 (Bankr.

13
DB02:9078575.1                                                                                                    068063.1001

S.D.N.Y. 1987). Together with funds on hand as of the Petition Date, funds generated through their regular business operations and the $750 million DIP Facility, the Debtors have sufficient liquidity to pay, and are paying, their undisputed post-petition obligations as such obligations come due. As of October 31, 2009, the Debtors had approximately $597.1 million in cash on hand and the Debtors believe they will have sufficient cash to fund these chapter 11 cases. Moreover, the Debtors continue to manage their business operations effectively and are preserving the value of their estates for the benefit of their creditors.

23. <u>The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan</u>. The Debtors have already filed their Plan of Reorganization and believe it is confirmable in its current form. Extending the Current Exclusivity Periods will ensure that the Debtors will be able to see the Plan of Reorganization through to confirmation.

24. <u>The Debtors Are Making Progress in Negotiating with Creditors</u>. As discussed above, the Debtors regularly consulted with their creditor constituencies and worked hard to establish cooperative and productive relationships with such constituencies and their professionals. Furthermore, the Debtors worked hand in hand with the Committee and other creditor constituencies in formulating the Plan of Reorganization and the Debtors believe the Committee is supportive of the Plan of Reorganization. The Debtors have no reason to believe that this cooperative framework will not continue as they work towards confirming the Plan of Reorganization.

25. <u>The Short Tenure of These Cases</u>. As discussed above, the Debtors have accomplished a substantial amount in 11 months, a relatively short period of time for such sizable and complex U.S. and cross-border cases. It is not uncommon for a further extension of the exclusivity periods to be requested in such large and complex cases. In light of the relatively

14
DB02:9078575.1 068063.1001

short duration and complexity of these cases, the challenges faced by the Debtors and the progress that the Debtors have made to date, the Debtors submit that an extension of the Current Exclusivity Periods is warranted.

26. <u>Termination of the Debtors' Exclusive Periods Would Adversely Impact These Cases</u>. This factor is of utmost importance in these chapter 11 cases. Termination of the Current Exclusivity Periods would adversely impact the Debtors' business operations and progress. If this Court were to deny the Debtors' request for an extension of the Current Exclusivity Periods, any party in interest would be free to propose a plan of reorganization for each of the Debtors. This would deny the Debtors a fair opportunity to confirm the Plan of Reorganization as currently filed and the ability to make modifications to the Plan of Reorganization, to the extent necessary. Such a result would not advance the rehabilitative objectives of the chapter 11 process, but would instead thwart those objectives. Indeed, such a ruling would be destabilizing, potentially fostering a chaotic environment at the very time the Debtors are focusing their efforts on the confirmation of the Plan of Reorganization which was heavily negotiated with the Committee and other creditor constituencies. Denying the relief requested herein could critically impair the Debtors' ability to successfully reorganize with no benefit to the Debtors' estates, creditors, employees, customers and other stakeholders.

27. <u>Unresolved Contingencies</u>. Although the Debtors believe their Plan of Reorganization resolves all contingencies in these chapter 11 cases, the lack of unresolved contingencies alone should not serve as a reason to terminate exclusivity. The Debtors seek to work efficiently and unfettered from distraction in the confirmation of their Plan of Reorganization, while maintaining the flexibility to address issues that may be raised with

15
DB02:9078575.1                                                                                                    068063.1001

respect to the Plan of Reorganization, including making any modifications thereto to the extent necessary to address any such issues.

28. The Debtors respectfully submit that, under all of the relevant facts and circumstances, the requested extension of the Current Exclusivity Periods will not prejudice the legitimate interests of any creditor and will provide the Debtors with a meaningful and reasonable opportunity to confirm their Plan of Reorganization. Based upon the foregoing, the Debtors submit that ample cause exists to extend the Current Exclusivity Periods in these bankruptcy proceedings pursuant to section 1121(d) of the Bankruptcy Code.

## NOTICE

29. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel to the Committee; (vi) counsel to the agents for the Debtors' prepetition loan facilities; (vii) counsel to the agents for the Debtors' post-petition lenders; (viii) the indenture trustees for each series of the Debtors' pre-petition notes; and (ix) those parties entitled to notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested in this Motion, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request entry of an order, in substantially the form attached hereto as <u>Exhibit A</u>, (i) extending the Exclusive Filing Period through and including May 21, 2010, (ii) extending the Exclusive Solicitation Period through and including July 21, 2010, and (iii) granting such other relief as is just and proper.

Dated: Wilmington, Delaware
December 28, 2009

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Matthew A. Clemente
Dennis M. Twomey
Bojan Guzina
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ATTORNEYS FOR THE DEBTORS AND
DEBTORS-IN-POSSESSION