**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SMURFIT-STONE CONTAINER CORPORATION, et al.,[1] | Case No. 09-10235 (BLS) |
| | Jointly Administered |
| Debtors. | Requested Hearing Date: January 14, 2010 at 11:00 a.m. (ET)<br>Requested Objection Deadline: January 11, 2010 at 4:00 p.m. (ET) |

**MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363(b) AND
364(b) OF THE BANKRUPTCY CODE FOR AUTHORITY TO (A) ENTER
INTO EXIT TERM LOAN FACILITY ENGAGEMENT AND
ARRANGEMENT LETTER AND FEE LETTER, (B) PAY ASSOCIATED
FEES AND EXPENSES, AND (C) FURNISH RELATED INDEMNITIES**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order, pursuant to sections 105(a), 363(b) and 364(b) of title 11 of the United Stated Code (the "Bankruptcy Code"), for authority to (a) enter into (i) the Engagement and Arrangement Letter (the "Arrangement Letter", attached hereto as Exhibit A) by and among the Debtors, JPMorgan Chase Bank, N.A. ("JPMCB"), J.P. Morgan Securities Inc. ("J.P. Morgan"), Deutsche Bank Securities Inc. ("DBSI") and Banc of America Securities LLC ("BAS", and with JPMCB, J.P. Morgan and DBSI, the "Arrangement Parties"), and (ii) the Arrangement Fee Letter (the "Arrangement Fee Letter") by and among the Debtors and the Arrangement Parties (together, as amended, restated,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Smurfit-Stone Container Corporation (1401), Smurfit-Stone Container Enterprises, Inc. (1256), Calpine Corrugated, LLC (0470), Cameo Container Corporation (5701), Lot 24D Redevelopment Corporation (6747), Atlanta & Saint Andrews Bay Railway Company (0093), Stone International Services Corporation (9630), Stone Global, Inc. (0806), Stone Connecticut Paperboard Properties, Inc. (8038), Smurfit-Stone Puerto Rico, Inc. (5984), Smurfit Newsprint Corporation (1650), SLP Finance I, Inc. (8169), SLP Finance II, Inc. (3935), SMBI Inc. (2567), Smurfit-Stone Container Canada Inc. (3988), Stone Container Finance Company of Canada II (1587), 3083527 Nova Scotia Company (8836), MBI Limited/Limitée (6565), Smurfit-MBI (1869), 639647 British Columbia Ltd. (7733), B.C. Shipper Supplies Ltd. (7418), Specialty Containers Inc. (6564), SLP Finance General Partnership (9525), Francobec Company (7735), and 605681 N.B. Inc. (1898). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 222 North LaSalle Street, Chicago, Illinois 60601.

supplemented, and/or otherwise modified, the "Term Loan Arrangement Documents"),[2] (b) pay those fees and expenses expressly set forth in, and pursuant to the terms and conditions of, the Term Loan Arrangement Documents, and (c) furnish those indemnities expressly set forth in, and pursuant to the terms and conditions of, the Term Loan Arrangement Documents. In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On January 26, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3] On January 27, 2009, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Contemporaneously with the filing of this Motion, the Debtors and J.P. Morgan filed the Joint Motion of the Debtors and J.P. Morgan Securities Inc. For Entry of an Order Authorizing the Filing Under Seal of the Arrangement Fee Letter Relating to Exit Facility (the "Seal Motion"). In the Seal Motion, the Debtors and J.P. Morgan propose to file the Arrangement Fee Letter under seal with the Court and provide a copy of the Arrangement Fee Letter to the Office of the United States Trustee and the Committee, as well as on a "professional eyes only" basis to any party-in-interest who requests such a copy and who executes a confidentiality agreement acceptable to the Debtors and J.P. Morgan.

[3] On the Petition Date, following the commencement of these chapter 11 proceedings, certain of the Debtors – including Smurfit-Stone Container Canada Inc., a wholly-owned subsidiary of SSCE, and certain of its affiliates (collectively, the "Cross-Border Debtors") – applied for protection from their creditors in Canada pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA") or other insolvency laws in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"). On the Petition Date, the Canadian Court issued an order that, *inter alia*, imposed a stay of all proceedings (the "CCAA Stay") against the Cross-Border Debtors and their property in Canada. The Cross-Border Debtors are Smurfit-Stone Container Canada Inc., Stone Container Finance Company of Canada II, 3083527 Nova Scotia Company, MBI Limited/Limitée, Smurfit-MBI, 639647 British Columbia Ltd., B.C. Shipper Supplies Ltd., Specialty Containers Inc., SLP Finance General Partnership, Francobec Company, and 605681 N.B. Inc. Smurfit-MBI and SLP Finance General Partnership did not apply for protection under the CCAA but did receive certain relief under the CCAA Initial Order, including all protections of the CCAA Stay. In addition, Smurfit-MBI, SLP Finance General Partnership and the other Cross-Border Debtors sought and received recognition of their respective Chapter 11 Cases in the Canadian Court under Section 268 of the Bankruptcy and Insolvency Act, R.S.C. 1985 c. B-3.

DB02:9091843.1    068063.1001

3. On February 5, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## THE EXIT TERM LOAN ARRANGEMENT DOCUMENTS

5. On December 22, 2009, the Debtors filed revised versions of their Joint Plan of Reorganization (the "Plan") and Disclosure Statement for the Joint Plan of Reorganization (the "Disclosure Statement"). A hearing to consider the Disclosure Statement is scheduled for January 29, 2010.

6. A key element of the restructuring contemplated by the Plan is the availability of exit financing that provides sufficient funding for the Debtors to meet their cash obligations under the Plan and for the reorganized Debtors to have sufficient working capital for their business operations and general corporate purposes. In that regard, the Debtors currently contemplate entering into a term loan facility (which is the subject of this Motion) and a revolving credit facility in connection with their emergence from bankruptcy. Section 6.5 of the Plan specifically provides that certain of the Debtors shall enter into definitive documentation for their exit financing on or prior to the effective date of the Plan. Entry into the Term Loan Arrangement Documents constitutes the first step in arranging the Debtors' contemplated US $1,200,000,000 exit term loan facility (the "Term Loan Facility").

7. The Debtors have long known that exit financing would be required to implement a plan of reorganization. Accordingly, the Debtors maintained ongoing relationships with numerous financial institutions and completed numerous analyses as to the likely amount and structure of an exit financing. After examining their options, and in consultation with their financial advisors, Lazard Freres & Co., LLC ("Lazard"), the Debtors selected the Arrangement Parties to structure, arrange and syndicate the Term Loan Facility. The Debtors and the Arrangement Parties negotiated each of the Term Loan Arrangement Documents extensively, at arm's-length, and in good faith, with the advice of their respective counsel and financial advisors, culminating in the Term Loan Arrangement Documents described in this Motion.

8. As described in more detail below, the Arrangement Letter contemplates that the Arrangement Parties will use commercially reasonable efforts to structure, arrange and syndicate the Term Loan Facility and will assist in obtaining commitments from prospective lenders in respect of the Term Loan Facility. Pursuant to the Arrangement Letter, J.P. Morgan, DBSI, and BAS will act as joint bookrunners for the Term Loan Facility, J.P. Morgan, DBSI, and BAS will act as co-lead arrangers for the Term Loan Facility, JPMCB will act as administrative agent and collateral agent for the Term Loan Facility and DBSI will act as syndication agent. The Arrangement Letter also provides that the Debtors will provide indemnities to the Arrangement Parties pursuant to the terms of the Arrangement Letter and will reimburse the Arrangement Parties for reasonable out-of-pocket expenses.

9. In return for the Arrangement Parties' undertakings set forth in the Arrangement Letter, the Debtors have agreed, among other things, to enter into the Arrangement Fee Letter, pursuant to which the Debtors agree to pay to J.P. Morgan (for the accounts of J.P. Morgan,

DB02:9091843.1 068063.1001

DBSI and BAS) an arrangement fee based on US$1,200,000,000 or such lesser amount of commitments as are raised by the Arrangement Parties.

10. The Debtors expect that once the Term Loan Arrangement Documents are executed and approved, the Arrangement Parties and the Debtors will seek commitments from prospective lenders in respect of the Term Loan Facility (though the Arrangement Parties may commence syndication efforts before such approval, <u>provided</u> that the Arrangement Parties shall have the right to suspend syndication efforts at any time before such approval has been obtained), and the Debtors and Arrangement Parties will negotiate the definitive documentation for the Term Loan Facility, including a credit agreement. The Debtors further anticipate that they will separately seek this Court's authority to enter into a definitive credit agreement in respect of the Term Loan Facility at the appropriate time.

**Summary of the Terms and Conditions of the Term Loan Arrangement Documents**[4]

11. The Arrangement Letter contains various provisions related to the indemnification, fees and expenses, and termination of the Debtors' engagement of the Arrangement Parties, which are outlined below:

- Terms of Engagement: J.P. Morgan, DBSI, and BAS (the "Bookrunners") will use commercially reasonable efforts to structure, arrange and syndicate the Term Loan Facility and assist the Debtors in obtaining commitments from prospective lenders. The Bookrunners will manage, in consultation with the Debtors, all aspects of the syndication, including, but not limited to, decisions as to the selection of institutions to be approached, when commitments will be accepted, which institutions will participate, the allocations of the commitments and the amount and distribution of fees among the Lenders.
- Termination: The Arrangement Letter will automatically terminate, unless the parties thereto, in their sole discretion, agree to an extension, (i) if a definitive credit agreement is entered into with respect to the Term Loan Facility on the

---

[4] The descriptions of the terms and provisions of the Term Loan Facility and the Term Loan Arrangement Documents contained herein are summary in nature, and are qualified in their entirety by the Term Sheet, the Arrangement Letter, and the Arrangement Fee Letter. Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Term Sheet and Exit Term Loan Arrangement Documents.

stated date on which the lending commitments under such credit agreement expire by their terms without the Funding Date having occurred or (ii) on June 30, 2010 if no definitive credit agreement is entered into with respect to the Term Loan Facility on or before such date.

- Indemnification: The Debtors agree to indemnify and hold harmless the Bookrunners, JPMCB (as administrative agent) and DBSI (as syndication agent) and each other agent or co-agent designated by the Bookrunners with respect to the Term Loan Facility and their respective officers, directors, employees, affiliates, advisors, agents and controlling persons from and against any and all losses, claims, damages and liabilities to which any such person may become subject arising out of or in connection with the Arrangement Letter, the Fee Letters, the Term Loan Facility, the use of any proceeds thereof, the transactions contemplated thereby or any claim, litigation, investigation or proceeding relating to any of the foregoing, and to reimburse each of such indemnified parties upon presentation of a summary statement for any reasonable documented legal or other out-of-pocket expenses incurred in connection with the above; provided that the indemnity will not, as to any indemnified party, apply to losses, claims, damages, liabilities or related expenses to the extent that they are determined by final, non-appealable judgment of a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of such indemnified party or its related parties. Pursuant to Section 364(b) of the Bankruptcy Code, the Debtors' obligations under the Arrangement Letter and the Fee Letters shall constitute administrative expenses in these Chapter 11 proceedings.

- Fees and Expenses: The Debtors agree to pay to JPMorgan (for the accounts of the Bookrunners as further described in the Term Sheet or the applicable Fee Letter) and to JPMCB, for its account, the nonrefundable fees set forth in the Term Sheet and in the Arrangement Fee Letter and the Administrative Agent Fee Letter as and when provided in the Term Sheet or the applicable Fee Letter, as the case may be, and subject to the terms and conditions set forth in the Arrangement Letter. The Debtors further agree to reimburse each of the Bookrunners, JPMCB (as administrative agent) and their respective affiliates upon presentation of a summary statement for all reasonable out-of-pocket expenses, including syndication expenses, travel expenses and reasonable fees, charges and disbursements of a single counsel incurred in connection with the Term Loan Facility and any related documentation, whether or not the Term Loan Facility is made available or the Credit Agreement is executed.

- Confidentiality: The Bookrunners, JPMCB and their affiliates agree not to use confidential information obtained from the Debtors by virtue of the transaction contemplated by the Arrangement Letter or its other relationships with the Debtors in connection with the performance of services for other companies and agree not to furnish any such information to other companies. The Debtors agree that the Arrangement Letter and the Fee Letters, their terms and substance and any other information and work product provided by the Arrangement Parties may only be disclosed to the Debtors' officers, directors, employees, attorneys, and other agents on a confidential, "need to know" basis or as required by law,

DB02:9091843.1    068063.1001

court order, or regulatory authority. Contemporaneously with the filing of this Motion, the Debtors and J.P. Morgan filed the Seal Motion. In the Seal Motion, the Debtors and J.P. Morgan propose to file the Arrangement Fee Letter under seal with the Court and provide a copy of the Arrangement Fee Letter to the Office of the United States Trustee and the Committee, as well as on a "professional eyes only" basis to any party-in-interest who requests such a copy and who executes a confidentiality agreement acceptable to the Debtors and J.P. Morgan.

- No Financing Obligation: The Debtors and Arrangement Parties agree that the Arrangement Letter does not constitute or give rise to any obligation on the part of the Bookrunners, JPMCB as administrative agent, or any of their respective affiliates to provide financing.

12. The Arrangement Letter makes reference to the Summary of Terms and Conditions (the "Term Sheet") which sets forth the terms and conditions for the Term Loan Facility. The Term Sheet has not yet been finalized and, as discussed above, the final terms and conditions of the Term Loan Facility will be included in a comprehensive new credit agreement that is expected to be agreed upon between the Debtors and the Arrangement Parties.

13. However, various key terms and provisions of the Term Loan Facility as set forth in the Term Sheet are summarized below:

- Borrower: Smurfit-Stone Container Enterprises, Inc., a Delaware corporation (the "Borrower"). Smurfit-Stone Container Corporation, a Delaware Corporation ("SSCC") will merge with and into the Borrower on the Funding Date, with the Borrower surviving such merger and changing its name to Smurfit-Stone Container Corporation.

- Guarantors: The obligations of the Borrower shall be guaranteed by each existing and future direct and indirect domestic Material Subsidiary of the Borrower (other than JSC Timber Finance Inc., Timber Capital Holdings LLC and Timer Note Holdings LLC) (collectively, the "Guarantors" and, together with the Borrow, the "Loan Parties").

- Co-Lead Arrangers and Bookrunners: J.P. Morgan, DBSI and BAS (in such capacity, the "Arrangers")

- Administrative Agent: JPMCB in such capacity, the "Administrative Agent").

- Syndication Agent: DBSI (in such capacity, the "Syndication Agent").

- Documentation Agent: BAS.

- Lenders: A syndicate of banks financial institutions and other entities arranged by the Arrangers and acceptable to the Borrower.

- Term Facility: A new 6-year senior secured term loan facility (the "Term Facility") in an aggregate principal amount of $1,200,000,000. The term loans made under the Term Facility (the "Term Loans") shall be repayable in equal quarterly installments for five years and nine months in an aggregate amount equal to 1.0% of its original principal amount, with the balance payable at maturity. The commitments under the Term Facility are referred to herein as the "Term Loan Commitments". Notwithstanding anything to the contrary herein, the Term Loan Commitments will terminate if the Funding Date has not occurred on or prior to the date that is five months after the Closing Date.

- Purpose: The proceeds of the Term Loans shall be used, together with cash on hand of the Borrower and its subsidiaries, to satisfy claims against the Borrower and its subsidiaries pursuant to the Plan, and for general corporate purposes and working capital needs.

- Availability: The Term Loans will be available in a single drawing on the effective date of the Plan (the "Funding Date"). Amounts in respect of the Term Loans that are repaid or prepaid may not be reborrowed.

- Interest Rates: Interest on the loans will accrue on a per annum basis, at the option of the company, at (i) the Libor rate (for the applicable interest period, subject to a floor of 2.00%) plus 5.00% or (ii) the ABR rate (highest of the prime rate, the federal funds rate plus 0.5% and the one month Libor rate plus 1.00%, subject to a floor of 3.00%) plus 4.00%.

- Security: The Term Loans (together with cash management services and designated hedging obligations) will be secured by (a) a first priority lien on substantially all assets of the company and its material U.S. subsidiaries (other than accounts receivable, inventory and related assets) and a pledge of capital stock of all material subsidiaries (limited to 65% in the case of first-tier foreign subsidiaries) and (b) a second priority lien on the accounts receivable, inventory and related assets of the company and its material U.S. subsidiaries.[5]

- Conditions Precedent: The effectiveness of the Term Facility on the Closing Date and the funding of the Term Loans on the Funding Date will be conditioned upon certain conditions.

- Events of Default: Substantially the same as set forth in the Prepetition Credit Agreement. The events of default will become effective on, and shall apply from and after, the Funding Date.

---

[5] The granting and perfection of liens and security interests will not occur on the Closing Date, but rather are contemplated to occur on the Funding Date.

14. In addition to the fees and expense reimbursement provided for in the Arrangement Letter, the Debtors will be obligated to pay certain fees associated with the Term Loan Facility pursuant to the Arrangement Fee Letter. The Arrangement Fee Letter does not give rise to a financing obligation, but provides for the payment of fees as consideration for the Arrangement Parties' efforts to structure, arrange and syndicate the Term Loan Facility. The fees payable pursuant to the Arrangement Fee Letter will be earned on the Closing Date (as defined in the Term Sheet), and will be due and payable as follows: (i) one-half on the Closing Date and (ii) one-half on the earliest of (x) the Funding Date, (y) the date of the Company's emergence for the bankruptcy proceedings and (z) the date on which the commitments under the Term Loan Facility expire or are terminated in their entirety.

## RELIEF REQUESTED

15. By this Motion, the Debtors seek authority pursuant to sections 105(a), 363(b) and 364(b) of the Bankruptcy Code to (i) enter into the Arrangement Letter and Arrangement Fee Letter; (ii) pay the fees and expenses related thereto; and (iii) furnish the indemnities associated therewith. The Debtors have negotiated the terms of the Arrangement Letter and the Arrangement Fee Letter in good faith and at arm's length with the Arrangement Parties after considering several potential options for exit financing. As a result, the Debtors believe that the terms of the Term Loan Arrangement Documents represent fair market rates and standard terms for the Term Loan Facility and that the accompanying terms and conditions, fees, expense reimbursement provisions and indemnities are reasonable.

## BASIS FOR RELIEF REQUESTED

16. Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

9
DB02:9091843.1                                                                                           068063.1001

estate." 11 U.S.C. § 363(b). Courts in this circuit interpreting section 363(b) of the Bankruptcy Code have generally approved the use, sale, or lease of estate property out of the ordinary course of business where there exists a sound business justification for the proposed transaction. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 142, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for the use of property under section 363). Moreover, pursuant to section 105(a) of the Bankruptcy Code, a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

17. A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner that is not ordinary course of business. See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Montgomery Ward Holding, Corp., 242 B.R. at 154. However, once a debtor articulates a valid business justification, a presumption arises that the debtor's decision is made "on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule therefore shields a debtor's management from judicial second guessing, and mandates that a court approve a debtor's business decision unless that decision is the product of

10
DB02:9091843.1                                                                                      068063.1001

bad faith or gross abuse of discretion. See id; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

18. The Debtors respectfully submit that, in their business judgment, there are substantial business justifications for allowing the Debtors to enter into the Term Loan Arrangement Documents, to pay the related fees and expenses set forth in the Term Loan Arrangement Documents, and to provide the indemnities contemplated under the Arrangement Letter. As discussed above, exit financing is necessary to finance the Debtors' obligations under the Plan and to provide the Debtors with essential funding for their emergence from chapter 11. Rather than bear the risk of a change in the financial markets or the occurrence of other circumstances that might create obstacles to the Debtors' emergence from chapter 11, the Debtors seek to secure meaningful exit financing commitments as promptly as possible. The Debtors' entry into the Term Loan Arrangement Documents is a critical step forward in the process of securing the necessary exit financing.

19. Further, the payment of the fees and expenses described in the Term Loan Arrangement Documents in connection with and as consideration for the Arrangement Parties' efforts to structure, arrange and syndicate the Term Loan Facility is customary under the circumstances and the Debtors believe that the amounts requested are reasonable. The indemnities provided in the Exit Term Loan Arrangement Documents are also customary for this type of transaction and under the circumstances. The Debtors believe that the authority to pay the fees and expenses and provide indemnities is appropriate and necessary under the circumstances. As noted above, the Debtors and their professional advisors engaged in the substantial, arm's-length bargaining with the Arrangement Parties and their advisors over the core terms and conditions of the Term Loan Arrangement Documents.

20. The Debtors note that similar relief requested in this Motion has been granted to other debtors in this jurisdiction in other chapter 11 cases. See In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 4, 2009); In re Sea Containers Ltd., Case No. 06-11156 (KJC) (Bankr. D. Del. Nov. 20, 2007); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. May 5, 2006); In re Meridian Automotive Systems – Composite Operations, Inc., Case No. 05-11168 (MFW) (Bankr. D. Del. June 16, 2005); In re Federal-Mogul Global Inc., Case No. 01-10578 (RTL) (Bankr. D. Del. Oct. 1, 2004); In re Exide Techs., Case No. 02-11125 (KJC) (Bankr. D. Del. Sept. 12, 2003); In re ANC Rental Corp., Case No. 01-11200 (MFW) (Bankr. D. Del. April 2, 2003); In re Integrated Health Servs., Inc., Case No. 00-389 (MFW) (Bankr. D. Del. Oct. 10, 2002).

21. Accordingly, the Debtors believe that the significant benefits to the Debtors, their estates, and their creditors in permitting the Debtors' entry into the Term Loan Arrangement Documents, the payment of associated fees and expenses and the related indemnifications as contemplated by the Term Loan Arrangement Documents far outweigh the reasonable costs to the estates and represent an important step in obtaining the committed exit financing necessary to consummate the Plan. For the reasons stated above, the Court should authorize the Debtors to (i) enter into the Arrangement Letter and Arrangement Fee Letter, (ii) pay associated fees and expenses, and (iii) furnish related indemnities.

## NOTICE

22. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel to the Committee; (vi) counsel to the agents for the Debtors' prepetition loan facilities; (vii) counsel to

the agents for the Debtors' post-petition lenders; (viii) the indenture trustees for each series of the Debtors' pre-petition notes; and (ix) those parties entitled to notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested in this Motion, the Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

23. No prior request for the relief sought in this Motion has been made to this or any other court.

*Remainder of page intentionally left blank*

DB02:9091843.1          068063.1001

WHEREFORE, pursuant to sections 105(a), 363(b) and 364(b) of the Bankruptcy Code, the Debtors respectfully request entry of the Proposed Order, in substantially the form attached hereto as <u>Exhibit B</u>, (i) authorizing the Debtors to (a) enter into the Exit Term Loan Arrangement Documents, (b) pay associated fees and expenses, and (c) furnish related indemnities, and (ii) granting such other relief as is just and proper.

Dated: Wilmington, Delaware
January 2, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Matthew A. Clemente
Dennis M. Twomey
Bojan Guzina
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ATTORNEYS FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION