# EXHIBIT A

Arrangement Letter

J.P. MORGAN SECURITIES INC.　　　　　　DEUTSCHE BANK SECURITIES INC.
JPMORGAN CHASE BANK, N.A.　　　　　　　　　　60 Wall Street
270 Park Avenue　　　　　　　　　　　　　New York, New York 10005
New York, New York 10017

BANC OF AMERICA
SECURITIES LLC
One Bryant Park
New York, New York 10036

CONFIDENTIAL

January [ ], 2010

Smurfit-Stone Container Corporation
222 North LaSalle Street
Chicago, Illinois 60601

Attention of Mr. Timothy T. Griffith
　　　　　　Vice President and Treasurer

Engagement and Arrangement Letter

Ladies and Gentlemen:

You have advised JPMorgan Chase Bank, N.A. ("JPMCB"), J.P. Morgan Securities Inc. ("J.P. Morgan"), Deutsche Bank Securities Inc. ("DBSI") and Banc of America Securities LLC ("BAS" and, together with JPMCB, J.P. Morgan, and DBSI, "we" or "us") that Smurfit-Stone Container Corporation ("SSCC") and certain of its subsidiaries (individually and collectively, the "U.S. Entities") that are currently debtors in reorganization proceedings (the "U.S. Proceedings") under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "U.S. Bankruptcy Court") and Smurfit-Stone Container Canada Inc. and certain of its subsidiaries (the "Canadian Entities", and together with the U.S. Entities, the "Company") that are currently debtors subject to proceedings in Canada (the "Canadian Proceedings" and, together with the U.S. Proceedings, the "Bankruptcy Proceedings") under the Companies' Creditors Arrangement Act (the "CCAA") in the Ontario Superior Court of Justice (the "Canadian Bankruptcy Court", and, together with the U.S. Bankruptcy Court, the "Bankruptcy Court") have filed a Joint Plan of Reorganization (the "Plan") with the Bankruptcy Court pursuant to which the Company expects

to be reorganized and emerge from the Bankruptcy Proceedings. The Plan is described in, and included as an exhibit to, the Company's Disclosure Statement (the "Disclosure Statement") filed with the U.S. Bankruptcy Court on December 22, 2009. In connection with the foregoing, the Company has requested that we agree to structure, arrange and syndicate a term loan facility in an aggregate principal amount of US$1,200,000,000 (the "Facility"), fundings under which will be made available to the Company upon the confirmation and effectiveness of the Plan and the exit of the Company from the Proceedings. Capitalized terms used but not defined herein have the meanings assigned to them in the Term Sheet (as defined below).

In connection with the foregoing, the Bookrunners (as defined below) are pleased to advise you of their agreement to use commercially reasonable efforts to structure, arrange and syndicate the Facility and to assist you in obtaining commitments from prospective Lenders (as defined below) in respect of the Facility, in each case upon the terms and subject to the conditions set forth or referred to in this Engagement and Arrangement Letter and in the Summary of Terms and Conditions attached hereto as Exhibit A (the "Term Sheet"; this letter, together with the Term Sheet and the attachments thereto, the "Arrangement Letter").

It is agreed that (a) J.P. Morgan, DBSI and BAS will act as joint bookrunners for the Facility (collectively, the "Bookrunners"), (b) J.P. Morgan, DBSI and BAS will act as co-lead arrangers for the Facility, (c) JPMCB will act as administrative agent and collateral agent for the Facility (the "Administrative Agent"), (d) DBSI will act as syndication agent and (e) BAS will act as documentation agent. You agree that (i) J.P. Morgan will have "left" placement on any and all marketing materials or other documentation used in connection with the Facility and (ii) DBSI will have "immediate right" placement on any and all marketing materials or other documentation used in connection with the Facility. You agree that we may appoint additional financial institutions agreeable to you to act as named agents for the Facility. You agree that no additional bookrunners, agents, co-agents or arrangers will be appointed, no additional titles will be awarded and no compensation (other than compensation expressly contemplated by the Term Sheet or the Fee Letters referred to below) will be paid in connection with the Facility unless you and we shall so agree.

The Bookrunners reserve the right, prior to or after the execution of the definitive financing documentation for the Facility, to syndicate the Facility to a group of financial institutions (the "Lenders") identified by us and acceptable to you. The Bookrunners intend to commence their syndication efforts promptly upon the execution of this Arrangement Letter, and you agree actively to assist the Bookrunners in completing a syndication that is satisfactory to the Bookrunners and you. Such assistance shall include (a) your using commercially reasonable efforts to ensure that the Bookrunners' syndication efforts benefit materially from the existing banking relationships of you and your subsidiaries, (b) the hosting, with the Bookrunners, of one or more meetings or conference calls with the Lenders, (c) direct contact between your senior management and advisors, on the one hand, and the senior management and advisors of the Lenders, on the other hand, and (d) assistance in the preparation of an information package (including a Confidential Information Memorandum) and other marketing materials to be used in connection with the syndication. At the request of the Bookrunners, you agree to assist in the preparation of a version of the information package and presentation consisting exclusively of information and documentation that is either publicly available, or not material with respect to

the SSCC and its affiliates and any of their respective securities for purposes of United States Federal and state securities laws.

The Bookrunners will manage, in consultation with you, all aspects of the syndication, including but not limited to decisions as to the selection of institutions to be approached and when they will be approached, when their commitments will be accepted, which institutions will participate, the allocations of the commitments among the Lenders and the amount and distribution of fees among the Lenders. To assist the Bookrunners in their syndication efforts, you agree promptly to prepare and provide to the Bookrunners all information reasonably requested by us with respect to you and your subsidiaries, including all financial information and projections (the "Projections"), as they may reasonably request in connection with the arrangement and syndication of the Facility. You hereby represent and covenant that (a) all information other than the Projections and information of a general economic nature (the "Information") that has been or will be made available to the Bookrunners in writing by you or any of your representatives is or will be, when furnished and taken as a whole, complete and correct in all material respects and does not or will not, when furnished and when taken as a whole, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements contained therein not materially misleading in light of the circumstances under which such statements are made and (b) the Projections that have been or will be made available to the Bookrunners by you or any of your representatives have been or will be prepared in good faith based upon reasonable assumptions. In arranging and syndicating the Facility, we will be entitled to use and rely primarily on the Information and the Projections without responsibility for independent verification thereof.

As consideration for the agreement of the Bookrunners hereunder to perform the services described herein, you agree to pay or cause to be paid to JPMorgan (for the accounts of the Bookrunners as further described in the Term Sheet or the applicable Fee Letter) and to JPMCB, for its account, the nonrefundable fees set forth in the Term Sheet and in the Arrangement Fee Letter and the Administrative Agent Fee Letter, each dated the date hereof and delivered herewith (collectively, the "Fee Letters") as and when provided in the Term Sheet or the applicable Fee Letter, as the case may be, and subject to the terms and conditions set forth herein.

The agreement of the Bookrunners and the Administrative Agent to perform the services described herein are subject to (a) our not having discovered or otherwise becoming aware of material information not previously disclosed to us (including pursuant to public filings by the Company with the U.S. Securities and Exchange Commission or disclosed in the Disclosure Statement and the documents filed in connection with the Bankruptcy Proceedings set forth on Schedule 1 attached hereto prior to the date hereof) that we believe to be materially inconsistent with the information provided to us (including pursuant to such public filings) prior to the date hereof relating to the business, operations, assets, properties or financial condition of the SSCC and its subsidiaries, taken as a whole, (b) there not having occurred any event, change or condition that has had or could be reasonably expected to have a material adverse effect on the business, operations, assets, property, or financial condition of the SSCC and its subsidiaries, taken as a whole, since December 31, 2008, other than the commencement of the Bankruptcy Proceedings and those which customarily occur as a result of events following the commencement of a proceeding under Chapter 11 of the Bankruptcy Code and the CCAA),

(c) the negotiation, execution and delivery of definitive financing documentation with respect to the Facility reasonably satisfactory to the Bookrunners and their counsel, (d) the approval by each Bankruptcy Court, as necessary, of (i) the Facility (including the definitive credit agreement) and the transactions contemplated thereby, and (ii) the actions to be taken, undertakings to be made, obligations to be incurred by the Company and all liens or other securities to be granted by the Company in connection with the Facility (all such approvals to be evidenced by the entry of one or more orders of the Bankruptcy Courts in form and substance reasonably satisfactory to JPMCB), which orders shall, among other things, approve the payment by the Company of all of the fees that are provided for in the Fee Letters, and (e) your compliance with the terms of this Arrangement Letter. In addition, the agreement of the Bookrunners and the Administrative Agent to perform the services described herein are subject to the U.S. Bankruptcy Court having approved this Arrangement Letter and the Fee Letters, and your performance hereof and thereof, including approval as an administrative expense claim against you and your U.S. affiliates of your indemnification and cost reimbursement obligations hereunder and of your obligations under the Fee Letters (such approval to be evidenced by the entry of one or more orders of the U.S. Bankruptcy Court reasonably satisfactory in form and substance to JPMCB). You understand that syndication efforts in respect of the Facility will not commence until such approval has been granted, and you agree to endeavor to obtain such approval and orders as soon as practicable. Notwithstanding the foregoing, syndication efforts may commence before such approval has been granted at the discretion of the Arrangers; provided that the Arrangers shall have the right to suspend syndication efforts at any time before such approval has been obtained. The terms and conditions of the Facility are not limited to those set forth herein and in the Term Sheet. Those matters that are not covered by the provisions hereof and of the Term Sheet are subject to the approval and agreement of the Bookrunners and the Company.

You agree (a) to indemnify and hold harmless each of the Bookrunners, the Administrative Agent, DBSI as syndication agent, BAS as documentation agent, and each other agent or co-agent designated by the Bookrunners with respect to the Facility and their respective officers, directors, employees, affiliates, advisors, agents and controlling persons from and against any and all losses, claims, damages and liabilities to which any such person may become subject arising out of or in connection with this Arrangement Letter, the Fee Letters, the Facility, the use of any proceeds thereof, the transactions contemplated hereby or thereby or any claim, litigation, investigation or proceeding relating to any of the foregoing (any of the foregoing, a "Proceeding"), regardless of whether any of such indemnified parties is a party thereto or whether a Proceeding is initiated by or on behalf of a third party or you or any of your affiliates, and to reimburse each of such indemnified parties upon presentation of a summary statement for any reasonable and documented legal or other out-of-pocket expenses incurred in connection with investigating or defending any of the foregoing, provided that the foregoing indemnity will not, as to any indemnified party, apply to losses, claims, damages, liabilities or related expenses to the extent that they are determined by the final, non-appealable judgment of a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of such indemnified party (or its related parties) and (b) to reimburse each of the Bookrunners, the Administrative Agent and their respective affiliates from time to time upon presentation of a summary statement for all reasonable out-of-pocket expenses, including syndication expenses, travel expenses and reasonable fees, charges and disbursements of a single counsel (in addition to bankruptcy counsel and local counsel, including but not limited to counsel in Delaware)

incurred in connection with the Facility and any related documentation (including this Arrangement Letter, the Fee Letters and the definitive financing documentation with respect to the Facility) whether or not the Facility is made available or the Credit Agreement is executed. No indemnified person shall be liable for any damages arising from the use by others of information or other materials obtained through electronic, telecommunications or other information transmission systems, and neither the Company nor any indemnified party shall be liable for any special, indirect, punitive or consequential damages in connection with its activities related to this Arrangement Letter, the Fee Letters or the Facility; provided that nothing in this sentence will relieve the Company of any obligation it may otherwise have to indemnify any indemnified party for the foregoing types of damages.

It is understood and agreed that this Arrangement Letter and the Fee Letters shall not constitute or give rise to any obligation on the part of the Bookrunners, the Administrative Agent or any of their respective affiliates to provide any financing, except as expressly provided herein.

You acknowledge and agree that (a) no fiduciary, advisory or agency relationship between you, on the one hand, and the Bookrunners and JPMCB, on the other hand, is intended to be or has been created in respect of any of the transactions contemplated by this Arrangement Letter or the Fee Letters, regardless of whether the Bookrunners or JPMCB have advised or are advising you on other matters, (b) the Bookrunners and JPMCB, on the one hand, and you, on the other hand, have an arms-length business relationship that does not directly or indirectly give rise to, nor do you rely on, any fiduciary duty on the part of the Bookrunners or JPMCB, (c) you are capable of evaluating and understanding, and you understand and accept, the terms, risks and conditions of the transactions contemplated by this Arrangement Letter, and (d) you have been advised that each of the Bookrunners and JPMCB is engaged in a broad range of transactions that may involve interests that differ from your interests and that none of the Bookrunners or JPMCB has any obligation to disclose such interests and transactions to you by virtue of any fiduciary, advisory or agency relationship.

You acknowledge that the Bookrunners, JPMCB and their respective affiliates may be providing debt financing, equity capital or other services (including but not limited to financial advisory services) to other companies in respect of which you may have conflicting interests regarding the transactions described herein and otherwise. None of the Bookrunners, JPMCB or any of their respective affiliates will use confidential information obtained from you by virtue of the transactions contemplated by this Arrangement Letter or its other relationships with you in connection with the performance by the Bookrunners, JPMCB or any of their respective affiliates of services for other companies, and none of the Bookrunners, JPMCB or any of their respective affiliates will furnish any such information to other companies. You also acknowledge that none of the Bookrunners, JPMCB or any of their respective affiliates has any obligation to use in connection with the transactions contemplated by this Arrangement Letter, or to furnish to the Company or its subsidiaries or representatives, confidential information obtained by the Bookrunners, JPMCB or any of their respective affiliates from any other company or person.

This Arrangement Letter shall not be assignable by you without the prior written consent of each of the Bookrunners and JPMCB (and any purported assignment without such

consent shall be null and void). This Arrangement Letter is intended to be solely for the benefit of the parties hereto (and indemnified persons), is not intended to confer any benefits on, or create any rights in favor of, any person other than the parties hereto (and indemnified persons) and may not be amended or waived except by an instrument in writing signed by you, the Bookrunners and JPMCB. Any and all obligations of, and services to be provided by, the Bookrunners and JPMCB hereunder may be performed, and any and all rights of such person hereunder may be exercised, by or through their respective affiliates without affecting the obligations of such person hereunder. This Arrangement Letter may be executed in any number of counterparts, each of which shall be an original and all of which, when taken together, shall constitute one agreement. Delivery of an executed signature page of this Arrangement Letter by facsimile or other electronic transmission shall be effective as delivery of a manually executed counterpart hereof. This Arrangement Letter and the Fee Letters are the only agreements entered into among us with respect to the Facility and set forth the entire understanding of the parties with respect thereto. THIS ARRANGEMENT LETTER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICT OF LAW PRINCIPLES THEREOF.

EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY OR ON BEHALF OF ANY PARTY RELATED TO OR ARISING OUT OF THIS ARRANGEMENT LETTER OR THE PERFORMANCE OF SERVICES HEREUNDER.

Each of the parties hereto hereby irrevocably and unconditionally (a) submits, for itself and its property, to the exclusive jurisdiction of any New York State court or Federal court of the United States of America sitting in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Arrangement Letter or the Fee Letters or the transactions contemplated hereby, or for recognition or enforcement of any judgment, and agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court; provided that during the period prior to the effective date of the Plan each of the parties hereto submits to the jurisdiction of the U.S. Bankruptcy Court with respect to matters relating hereto, (b) waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Arrangement Letter or the Fee Letters or the transactions contemplated hereby in any New York State or Federal court or, as applicable, the U.S. Bankruptcy Court, and (c) waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

This Arrangement Letter is delivered to you on the understanding that this Arrangement Letter and the Fee Letters, their terms and substance and any other information and work product provided by the Bookrunners, JPMCB or any of their respective affiliates, employees, officers, attorneys or other professional advisors in connection herewith or therewith shall be for your confidential use only and shall not be disclosed, directly or indirectly, by you to any other person other than to your controlling persons, directors, employees, officers, accountants, attorneys and professional advisors directly involved in the consideration of this matter, provided that nothing herein shall prevent you from disclosing such information (a) upon the order of any court or administrative agency, (b) upon demand of any regulatory agency or

authority or (c) otherwise as required by applicable law, including the Bankruptcy Code. The restrictions contained in the preceding sentence shall cease to apply (except in respect of the Fee Letters and their respective terms and substance) after this Arrangement Letter has been accepted by you. Notwithstanding the foregoing, you shall be permitted to furnish, under seal, a copy of the Arrangement Fee Letter to the U.S. Bankruptcy Court, any committee appointed in the U.S. Proceedings, the Office of the United States Trustee and such other parties in interest as may be necessary to obtain the required U.S. Bankruptcy Court approvals of the Facility and the agreements and obligations related thereto; <u>provided</u> that any copies of the Arrangement Fee Letter may only be furnished pursuant to and in compliance with the terms of a seal order regarding the Arrangement Fee Letter that is anticipated to be entered by the U.S. Bankruptcy Court pursuant to a joint motion which will be filed by the Borrower and J.P. Morgan. Each of the Bookrunners and JPMCB agrees, and agrees to cause its respective affiliates, employees, officers, attorneys and other professional advisors, to maintain all non-public information concerning the Company and its subsidiaries as confidential in accordance with the confidentiality provisions set forth in the Prepetition Credit Agreement.

The compensation, reimbursement, indemnification, confidentiality, jurisdiction and waiver of jury trial provisions contained herein shall remain in full force and effect regardless of whether definitive financing documentation for the Facility shall be executed and delivered and notwithstanding the termination of this Arrangement Letter, provided that this Arrangement Letter shall in all other respects be superseded by the definitive financing documentation for the Facility upon the effectiveness thereof.

Each of the Bookrunners and the Administrative Agent hereby notifies you that pursuant to the requirements of the U.S.A. PATRIOT ACT (Title III of Pub. L. 107 56 (signed into law October 26, 2001)) (the "<u>Patriot Act</u>"), it and each of the Lenders may be required to obtain, verify and record information that identifies SSCC and the Borrower, which information may include the name and address of SSCC and the Borrower, and other information that will allow the Bookrunners and each of the Lenders to identify SSCC and the Borrower in accordance with the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act and is effective for the Bookrunners and each of the Lenders.

If the foregoing correctly sets forth our agreement, please indicate your acceptance of the terms of this Arrangement Letter and the Fee Letters by returning to us executed counterparts of this Arrangement Letter and the Fee Letters not later than 5:00 p.m., New York City time, on January [ ], 2010. The agreements of the Bookrunners and JPMCB hereunder to perform the services contemplated herein will expire at such time in the event we have not received such executed counterparts in accordance with the immediately preceding sentence. This Arrangement Letter will automatically terminate, unless the parties hereto, in their sole discretion, agree to an extension, (i) if a definitive Credit Agreement is entered into with respect to the Facility, on the stated date on which the lending commitments under such Credit Agreement expire by their terms (after giving effect to any extensions thereof in accordance with the terms of the Credit Agreement) without the Funding Date having occurred (it being understood that any earlier termination of such commitments pursuant to the Credit Agreement will not result in a termination of this Arrangement Letter) or (ii) on June 30, 2010 if no definitive Credit Agreement is entered into with respect to the Facility on or before such date.

[Remainder of this page intentionally left blank]

We are pleased to have been given the opportunity to assist you in connection with this important financing.

                Very truly yours,

                JPMORGAN CHASE BANK, N.A.,

                   by _____

                       Name:
                       Title:

                J.P. MORGAN SECURITIES INC.,

                   by _____

                       Name:
                       Title:

                DEUTSCHE BANK SECURITIES INC.,

                   by _____

                       Name:
                       Title:

                   by _____

                       Name:
                       Title:

                BANC OF AMERICA SECURITIES LLC,

                   by _____

                       Name:
                       Title:

Accepted and agreed to as of the date first
written above by:

**SMURFIT-STONE CONTAINER CORPORATION,**
for itself and each of its affiliates
constituting the Company


By:_____
    Timothy T. Griffith
    Vice President and Treasurer

# EXHIBIT A

# Term Sheet

# SCHEDULE 1

## Documents filed in Bankruptcy Proceedings

**Chapter 11 Documents**

DIP Financing Motion and Interim/Final Orders [Docket Nos. 14, 58 and 383]

Calpine Cash Collateral Motion and Interim/Final Orders [Docket Nos. 16, 60, 377 and 506]

Cash Management Motion and Interim/Final Orders [Docket Nos. 13, 41 and 366]

Continued Use of Cash Collateral Motion [Docket No. 3412]

Plan of Reorganization and Amended Plan of Reorganization and Related Exhibits [Docket Nos. 2914 and 3372]

Disclosure Statement and Amended Disclosure Statement and Related Exhibits [Docket Nos. 2915 and 3374]

Equity Committee Motion, Certain Related Pleadings and Order [Docket Nos. 1661, 1983, 2055, 2959 and 3071]

**CCAA Documents** (as set forth on the Monitor's website at http://www.deloitte.com/view/en_CA/ca/specialsections/insolvencyandrestructuringproceedings/smurfit-stonecontainercanada/index.htm)

January 26, 2009
Initial Order
Endorsement of Justice Pepall

January 28, 2009
Amended and Restated Initial Order
Endorsement of Justice Pepall – January 29, 2009 (dated January 27, 2009 in Endorsement)

February 24, 2009
Stay Extension Order and Endorsement

March 12, 2009
Cross Border Order and Endorsement

April 28, 2009
Stay Extension Order and Endorsement

June 25, 2009
Endorsement of Justice Pepall
Stay Extension Order

August 17, 2009
August 17 Order
August 17 Endorsement

September 25, 2009
Stay Extension Order
Endorsement

October 7, 2009
Endorsement
Endorsement of Justice Pepall – October 20, 2009
Endorsement of Justice Pepall – November 23, 2009

October 9, 2009
Endorsement

November 6, 2009
Claims Determination Order
Endorsement of Justice Pepall
Changes to Determination Order

December 1, 2009
Approval and Vesting Order – Whitby
Approval and Vesting Order – Edmonton
Endorsement of Justice Pepall

December 11, 2009
Motion Record

Monitor's Reports
Pre-Filing Report - January 26, 2009
First Report of Monitor - February 23, 2009
Second Report of Monitor - March 6, 2009
Third Report of Monitor - April 26, 2009
Fourth Report of Monitor - June 23, 2009
Fifth Report of Monitor - August 12, 2009
Sixth Report of Monitor - September 22, 2009
Seventh Report of Monitor - October 2, 2009
Eighth Report of Monitor - November 4, 2009
Ninth Report of Monitor - November 28, 2009
Tenth Report of Monitor - December 8, 2009