## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SMURFIT-STONE CONTAINER CORPORATION, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10235 (BLS)<br><br>Jointly Administered |

### OBJECTION OF AURELIUS CAPITAL MANAGEMENT, LP AND COLUMBUS HILL CAPITAL MANAGEMENT, L.P. TO MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH THE CONSOLIDATED U.S. DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

Aurelius Capital Management, LP, as manager of certain funds that are beneficial holders of the Notes (defined below) ("Aurelius") and Columbus Hill Capital Management, L.P., as manager of certain funds that are beneficial holders of the Notes ("CHCM," and together with Aurelius, the "Objecting Parties"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Motion For an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [Docket No. 3475] (the "Exclusivity Motion" or "Motion") filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), and in support hereof state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Smurfit-Stone Container Corporation (1401), Smurfit-Stone Container Enterprises, Inc. (1256), Calpine Corrugated, LLC (0470), Cameo Container Corporation (5701), Lot24D Redevelopment Corporation (6747), Atlanta & Saint Andrews Bay Railway Company (0093), Stone International Services Corporation (9630), Stone Global, Inc. (0806), Stone Connecticut Paperboard Properties, Inc. (8038), Smurfit-Stone Puerto Rico, Inc. (5984), Smurfit Newsprint Corporation (1650), SLP Finance I, Inc (8169), SLP Finance II, Inc. (3935), SMBI Inc. (2567), Smurfit-Stone Container Canada Inc. (3988), Stone Container Finance Company of Canada II (1587), 3083527 Nova Scotia Company (8836), MBI Limited/Limitée (6565), Smurfit-MBI (1869), 639647 British Columbia Ltd. (7733), B.C. Shipper Supplies Ltd. (7418), Specialty Containers Inc. (6564), SLP Finance General Partnership (9525), Francobec Company (7735), and 605681 N.B. Inc. (1898). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 150 North Michigan Avenue, Chicago, Illinois 60601.

## PRELIMINARY STATEMENT

The Objecting Parties object to the request of the Consolidated U.S. Debtors (as defined below) for a further extension of the Exclusive Periods (as defined below) with respect to Stone Container Finance Company of Canada II ("Finance II"). The Consolidated U.S. Debtors cannot establish that "cause" exists to extend the Exclusive Periods as to Finance II's chapter 11 case because Finance II meets none of the relevant factors to establish "cause" in the Third Circuit. Specifically:

- Finance II's case is not large or complex. Finance II is a separate legal entity with no on-going operations and no employees. Finance II's assets and liabilities are simple and should be addressed through a simple liquidation.

- Finance II has not made and cannot make good faith progress toward a reorganization. Finance II has nothing to reorganize, no reasonable likelihood of rehabilitation and no valid reorganizational purpose. Even the Consolidated U.S. Debtors concede in the Amended Plan that Finance II will be dissolved upon consummation of the Amended Plan.

- Finance II has not filed a viable plan of reorganization. The Amended Plan does not benefit Finance II and cannot be confirmed with respect to Finance II. The only possible justification for Finance II to remain in chapter 11 is an impermissible desire to benefit its affiliated Debtors to the detriment of Finance II and its creditors.

- Finance II has had more than sufficient time to develop a confirmable plan but has, instead, chosen to consent to being a proponent of the Amended Plan. Finance II has not engaged in negotiations of any kind with the Objecting Parties presumably because Finance II has effectively been unrepresented by its common counsel with the Consolidated U.S. Debtors.

- The Consolidated U.S. Debtors are seeking an extension of the Exclusive Periods with respect to Finance II solely in an attempt to force the Objecting Parties to accept a plan that is not satisfactory or appropriate as to Finance II.

For all the above reasons, the Motion to extend the Exclusive Periods must be denied as to Finance II.

# FACTUAL BACKGROUND[2]

## A. Procedural Background

1. On January 26, 2009 (the "Petition Date"), Finance II, Smurfit-Stone Container Canada Inc. ("SSC Canada"), Smurfit-Stone Container Enterprises, Inc. ("SSCE") and certain of their affiliates including Finance II (the "Consolidated U.S. Debtors") filed petitions for relief pursuant to chapter 11, title 11, of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Consolidated U.S. Debtors are operating their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On the same day, after the commencement of the chapter 11 cases, Finance II, SSC Canada and certain of their affiliates (not including Smurfit-Stone Container Corporation ("SSCC") or SSCE) (collectively, the "Canadian Debtors") filed for protection from their creditors in Canada under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA"), in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Bankruptcy Court"). The Consolidated U.S. Debtors' chapter 11 cases in the Bankruptcy Court have been recognized by the Canadian Bankruptcy Court as a "foreign proceeding" as defined in section 267 of the Bankruptcy and Insolvency Act ("BIA").

3. On May 1, 2009, the Consolidated U.S. Debtors filed their motion to extend the Exclusive Periods [Docket No. 855]. On May 18, 2009, this Court entered an order [Docket No. 954] extending the Consolidated U.S. Debtors' exclusive period in which to file a chapter 11 plan (the "Exclusive Filing Period") by one hundred twenty (120) days through September 23, 2009 and the exclusive period to solicit acceptances of a chapter 11 plan (the "Exclusive

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Amended Disclosure Statement (as defined below) or the Amended Plan (as defined below).

Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods") through November 23, 2009.

4. On August 24, 2009, the Consolidated U.S. Debtors filed their second motion to further extend the Exclusive Periods [Docket No. 1715]. On September 9, 2009, this court entered an order [Docket No. 1891] further extending the Exclusive Filing Period by one hundred twenty (120) days through January 21, 2010, and the Exclusive Solicitation Period through March 23, 2010.

5. On December 1, 2009, the Consolidated U.S. Debtors filed their Joint Plan of Reorganization [Docket No. 2914] (the "Plan") and related Disclosure Statement [Docket No. 2915] (the "Disclosure Statement") with the Bankruptcy Court. Thereafter, on December 22, 2009, the Consolidated U.S. Debtors amended the Plan [Docket No. 3372] (the "Amended Plan") and the Disclosure Statement [Docket No. 3374] (the "Amended Disclosure Statement"). The Canadian Debtors also filed the Amended Plan as part of their draft Plan of Arrangement (the "CCAA Plan") in the CCAA proceedings. The Amended Plan and CCAA Plan generally provide for a restructuring of the Consolidated U.S. Debtors and the Canadian Debtors in both the Bankruptcy Court and the Canadian Bankruptcy Court. Finance II is purportedly a proponent of the Amended Plan. The hearing on the adequacy of the Disclosure Statement has been set for January 29, 2010.

6. The Amended Plan provides for the dissolution of Finance II upon consummation of the Amended Plan. *See* Amended Plan § 6.7. The Amended Plan also contemplates a management Equity Incentive Plan (the "EIP") which includes a reservation of not less than 8% on a fully diluted basis of the New SSCC Common Stock (as defined in the Plan) for post-reorganization management. Moreover, the Amended Plan provides that certain of the Debtors'

key executives and managers will receive grants of equity in Reorganized SSCC totaling 4.1% on a fully diluted basis (the "Equity Grants").

7. On December 28, 2009, the Consolidated U.S. Debtors filed the Exclusivity Motion [Docket No. 3475] requesting a further extension of the Exclusive Periods by extending (i) the Exclusive Filing Period by one hundred twenty (120) days, through May 21, 2010, and (ii) the Exclusive Solicitation Period by one hundred twenty (120) days, through July 21, 2010.

## B. Finance II

### (i) FINANCE II'S CORPORATE STRUCTURE

8. Aurelius and CHCM are managers of funds that are beneficial holders of approximately 62% of the principal amount of the outstanding 7 3/8% Senior Notes due July 15, 2014 (the "Notes") issued on July 20, 2004 by Finance II. The Notes were originally issued in the principal amount of $200,000,000.

9. Finance II is an unlimited liability company incorporated under the *Companies Act (Nova Scotia)* and is a wholly-owned subsidiary of SSCE. Finance II has no operations, no employees and no on-going business activities; accordingly, it has no operations to restructure.

10. Finance II's corporate structure is typical of many Canada-U.S. cross-border financing structures which make use of an unlimited liability company formed under the laws of Nova Scotia (a "ULC") because a ULC is treated as a corporation for Canadian tax purposes but as a "disregarded entity" for U.S. federal income tax purposes. As a result of this tax-advantaged structure, SSCE (as the U.S. parent of Finance II) had the ability to deduct the interest payable by Finance II on the Notes for U.S. federal income tax purposes without having to recognize income with respect to any interest Finance II derived on the Intercompany Loan. At the same time,

---

[3] SSCE is the wholly-owned United States operating subsidiary of Debtor Smurfit-Stone Container Corporation ("SSCC"), which is a Delaware corporation.

however, the interest payable on the Notes, as well as the Intercompany Loan, was also deductible for Canadian income tax purposes  In order for the Smurfit group to obtain the intended benefits of the ULC structure, it was necessary, among other things, that the Intercompany Loan be treated as debt for Canadian tax purposes.

11. The Notes were issued in the public debt market by Finance II, as issuer, and pursuant to an Indenture between Finance II as borrower, SSCE as guarantor, and BNY Midwest Trust Company as trustee (the "Indenture"). The Notes were guaranteed by SSCE (the "Guarantee"). The Guarantee provides that SSCE "unconditionally guarantees to each Holder and the Trustee on behalf of the Holders . . . punctual payment of the principal . . . [and] interest" in connection with such Notes. Guarantee, § 10.01. Pursuant to the Indenture and to the offering memorandum, dated as of July 15, 2004 (the "Offering Memorandum"), with respect to the Notes, the Guarantee was issued on a senior and unsecured basis.

(ii) **FINANCE II'S COMMON OFFICERS AND DIRECTORS**

12. Finance II's only directors are Patrick J. Moore, Steven Klinger and John R. Murphy, all of whom are also executives of SSCC or its affiliates (the "SSCC Executives"). Patrick J. Moore is the Chairman of the Board and the Chief Executive Officer of SSCC, as well as a director and an officer of Finance II, and an employee of SSCC or one of its affiliates that is dominated and controlled by SSCC. Mr. Moore is subject to an employment agreement and SSCC's management incentive plan under which his compensation is tied in part to the success of SSCC. Mr. Moore also owns shares of stock in SSCC, is a participant in the EIP and will be entitled to Equity Grants if the Amended Plan is confirmed.

13. Steven Klinger is the President and Chief Operating Officer of SSCC and is a member of its Board, as well as a director and an officer of Finance II, and an employee of SSCC

or one of its affiliates that is dominated and controlled by SSCC. Mr. Klinger is subject to an executive retirement agreement, an employment agreement and SSCC's management incentive plan under which his compensation is tied in part to the success of SSCC. Mr. Klinger also owns shares of stock in SSCC, is a participant in the EIP and will be entitled to Equity Grants if the Amended Plan is confirmed.

14. John R. Murphy is a Senior Vice President and the Chief Financial Officer of SSCC, as well as a director and an officer of Finance II, and an employee of SSCC or one of its affiliates that is dominated and controlled by SSCC. Mr. Murphy is subject to SSCC's management incentive plan under which his compensation is tied in part to the success of SSCC. He, too, owns shares of stock in SSCC, is a participant in the EIP and will be entitled to Equity Grants if the Amended Plan is confirmed.

15. Craig A. Hunt is a Senior Vice President, Secretary and General Counsel of SSCC, as well as an officer of Finance II. Upon information and belief, Mr. Hunt signed the Intercompany Loan Agreement (as defined below) on behalf of *both* Finance II and SSC Canada. Mr. Hunt is also an employee of SSCC or one of its affiliates that is dominated and controlled by SSCC, and is subject to SSCC's management incentive plan under which his compensation is tied in part to the success of SSCC. Mr. Hunt also owns shares of stock in SSCC, is a participant in the EIP and will be entitled to Equity Grants if the Amended Plan is confirmed.

C.  **Finance II's Assets**

16. Although Finance II has no operations to restructure, it does have significant assets including Deficiency Claim (as defined below) against its parent company, SSCE, the Intercompany Claim (as defined below) against SSC Canada, and breach of fiduciary duty and other related party claims against the SSCC Executives and other fiduciaries (the "Related Party

Claims"). All of Finance II's assets are comprised of claims against other Debtors or Finance II's own officers and directors.

### (i) THE DEFICIENCY CLAIM AGAINST SSCE

17. In addition to its obligations as the guarantor of the Notes, SSCE is separately and independently liable for any inability of Finance II to fully satisfy the obligations under the Notes due to the corporate structure of Finance II. As stated, Finance II is an unlimited liability company incorporated under the *Companies Act (Nova Scotia)*. As the member (i.e., shareholder) of Finance II, SSCE is required under section 135 of the *Companies Act* to make contributions to Finance II in an amount sufficient to satisfy all of Finance II's debts and obligations to Finance II's creditors (the "Deficiency Claim").

### (ii) THE INTERCOMPANY CLAIM AGAINST SSC CANADA

18. Pursuant to that certain Loan Agreement, dated July 20, 2004 (the "Intercompany Loan Agreement"), by and between Finance II and SSC Canada, Finance II loaned $200 million to SSC Canada. The terms of the Intercompany Loan Agreement were not disclosed under the Indenture or the Offering Memorandum. Upon information and belief, the Intercompany Loan Agreement was signed by Mr. Hunt on behalf of both Finance II and SSC Canada. Pursuant to the Intercompany Loan Agreement, SSC Canada owes Finance II over $200 million (the "Intercompany Claim").

### (iii) THE RELATED PARTY CLAIMS AGAINST THE SSCC EXECUTIVES

19. As described above, Finance II's directors and officers are all beholden to SSCC and the Smurfit corporate group. Instead of trying to maximize the value of Finance II, the SSCC Executives have engaged in gross mismanagement and self-dealing (which is driven by their desire to increase the financial success of Finance II's ultimate parent SSCC) and have

violated their fiduciary duties of loyalty and care to Finance II's creditors by refusing to take actions that are manifestly in the best interests of Finance II's creditors. Because of their conflicted loyalties to the other Debtors, the SSCC Executives have subordinated their duties to Finance II by affirmatively misusing their control of and neglecting their duties to Finance II to benefit Finance II's affiliated Debtors and the SSCC Executives, all to the harm and prejudice of Finance II and its creditors.

20. As a result of this abdication of their fiduciary duties by the SSCC Executives, Finance II has meritorious Related Party Claims against those parties which should be pursued for the benefit of Finance II's creditors. The Amended Plan purports to release and enjoin these claims.

C. **Finance II's Liabilities**

21. The Notes are Finance II's only significant prepetition obligation. Other than the Notes, Finance II's prepetition liabilities consist of (A) a purported claim by SSCE against Finance II which, if valid, would constitute the basis for an additional claim by Finance II against SSCE due to the unlimited liability company structure, (B) an unspecified tax claim and (C) Finance II's guaranty of the Consolidated U.S. Debtors' DIP financing obligations, which have already been satisfied.

## ARGUMENT

22. Section 1121 of the Bankruptcy Code, which limits a debtor's exclusive right to file a plan of reorganization to 120 days, changed the law applied under the Bankruptcy Act[3] for the reason that "unlimited exclusivity gave a debtor 'undue bargaining leverage,' because it could use the threat of delay to force unfair concessions." *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 102 (3d Cir. 1988) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 231).

---

[3] The Bankruptcy Act of 1898, ch. 541, 30 Stat. 544, as amended (the "Bankruptcy Act").

This new cap on exclusivity "was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors." *In re Timbers of Inwood Forest Assoc., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) *(en banc), aff'd* 484 U.S. 365 (1988); *see* H.R. Rep. No. 595, 95th Cong., 2d Sess. 231-32 (exclusivity limitation "recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company.").

23. A request to extend exclusivity is a serious, rather than "routine," matter. *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). Upsetting the delicate balance of leverage between debtor and creditor intended by Congress requires an affirmative showing of cause, supported by evidence, made by the party seeking the extension. *In re Ravenna Indus., Inc.*, 20 B.R. 886, 890 (Bankr N.D. Ohio 1982). ("[T]he mere recitations of allegations deemed by a debtor to constitute cause for an extension of the exclusive period is insufficient."); *In re Lake in the Woods*, 10 B.R. 338, 345 (E.D. Mich. 1981); *McLean Indus., Inc.*, 87 B.R. at 834 ("[e]xtensions are not to be granted routinely nor cavalierly"); *In re Parker Street Florist & Garden Center, Inc.*, 31 B.R. 206, 207 (Bankr. D. Mass. 1983).

24. The burden is on the Consolidated U.S. Debtors, as movants, to demonstrate an affirmative showing of cause to extend the exclusivity periods. *In re Newark Airport/Hotel L.P.*, 156 B.R. 444, 451 (Bankr. D.N.J. 1993), *aff'd* 155 B.R. 93 (D.N.J. 1993); *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 487-88 (Bankr. D. Conn. 2007). Moreover, the bankruptcy court is afforded broad discretion to terminate exclusivity. *In re Pliant*, Case No. 09-10433 (MFW) (Bankr. D. Del. June 29, 2009) ("The Court's discretion to terminate exclusivity is broad").

25. The following factors are relevant to an analysis of whether cause exists to extend the debtor's exclusivity period:

a. The size and complexity of the case;

b. The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

c. The existence of good faith progress toward reorganization;

d. The fact that the debtor is paying its bills as they become due;

e. Whether the debtor has demonstrated reasonable prospects for filing a viable plan;

f. Whether the debtor has made progress in negotiations with its creditors;

g. The amount of time which has elapsed in the case;

h. Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

i. Whether an unresolved contingency exists that should delay confirmation of a plan.

*In re Dow Corning Corp.*, 208 B.R. 661, 664-66 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

26. The Consolidated U.S. Debtors concede these are the relevant factors to be considered by this Court in granting or denying the Exclusivity Motion. (Mot., ¶ 17.) In assessing the above-cited factors, "the primary consideration should be whether or not doing so would facilitate moving the case forward." *Dow Corning*, 208 B.R. at 670. As set forth below, application of these factors to this chapter 11 case weighs in favor of denial of the Exclusivity Motion.

I. **FINANCE II'S CASE IS NOT COMPLEX**

27. Finance II's chapter 11 case is not complex and does not benefit from being included in the more-complicated reorganizational efforts of the Smurfit Group. Finance II has no operations, no employees and no on-going business activities. Aside from the

Deficiency Claim, Intercompany Claim and Related Party Claims, the Objecting Parties are not aware of Finance II having any additional assets. Likewise, Finance II's liabilities are simple and consist only of the Notes, an alleged intercompany liability to SSCE, the unspecified potential Canadian tax claim and Finance II's guaranty of the DIP financing obligations (which have now been paid in full). Stated another way, there is little remaining to do in the Finance II case other than the pursuit of the Deficiency Claim, Intercompany Claim and Related Party Claims and the payment of its creditors in accordance with the priority schemes under the Bankruptcy Code. The size and complexity of Finance II's case does not justify a further extension of exclusivity.

## II. FINANCE II HAS NOT MADE GOOD FAITH PROGRESS TOWARD REORGANIZATION

28. Finance II cannot demonstrate any good faith progress toward reorganization because Finance II is simply *unable* to reorganize, as evidenced by the fact that the Amended Plan provides for the dissolution of Finance II upon consummation of the Amended Plan. *See* Amended Plan § 6.7. Finance II has no valid reorganizational purpose and should not have been included in the Amended Plan.

29. The Consolidated U.S. Debtors' Exclusivity Motion does not make any mention of Finance II. Instead, the Consolidated U.S. Debtors merely lump Finance II in with the rest of the Consolidated U.S. Debtors based on the need to achieve their "long-term operational plan." Mot., ¶ 21. So while the Consolidated U.S. Debtors claim that they are developing said long-term strategy, that simply is not true as to Finance II. Finance II has no operational goals, nor does it have operations to restructure.

30. It is abundantly clear that the sole purpose of Finance II remaining in chapter 11 is to benefit its affiliated Debtors by ensuring that the Deficiency Claim, Intercompany Claim

and Related Party Claims are not pursued and Finance II's creditors are disenfranchised. Remaining in chapter 11 for the purposes of discharging the Deficiency Claim, Intercompany Claim and Related Party Claims and protecting the SSCC Executives through confirmation of the Amended Plan and the CCAA Plan are not *valid* reorganizational purposes. Accordingly, the Consolidated U.S. Debtors cannot establish that Finance II is making good-faith progress toward reorganization and cannot justify a further extension of exclusivity for Finance II.

### III. FINANCE II HAS NOT DEMONSTRATED REASONABLE PROSPECTS FOR FILING A VIABLE PLAN

31. The Consolidated U.S. Debtors also cannot demonstrate that Finance II has reasonable prospects for confirming the Amended Plan. Because of various self-dealing by the SSCC Executives and the conflicts which permeate these cases, the Amended Plan was not proposed in good faith as to Finance II, does not meet the standards of section 1129 for confirmation and fails to address the Deficiency Claim, Intercompany Claim and Related Party Claims (other than to seek the discharge of these claims). Further, the only impaired class entitled to vote on the Amended Plan for Finance II, the class of claims held by the Objecting Parties, will vote against the Amended Plan. Accordingly, the Consolidated U.S. Debtors have not demonstrated reasonable prospects for confirming the Amended Plan for Finance II.

#### A. The Amended Plan Was Not Proposed in Good Faith as to Finance II

32. Disabling conflicts have prevented Finance II from developing a plan of reorganization that appropriately maximizes recoveries for the creditors of Finance II. This is because SSCC, through the SSCC Executives, has total operational and day-to-day control over Finance II and is using that control to the detriment of Finance II's creditors. Thus, while the SSCC Executives are obligated to act without self-dealing and in the best interests of Finance II and its creditors, they repeatedly have failed to do so. Due to these debilitating conflicts, the

DEL 86,299,300v9

13

SSCC Executives are not pursuing the Deficiency Claim, Intercompany Claim and Related Party Claims and not assuring that Finance II's interests are treated appropriately in the reorganization process and to date, have refused to place Finance II into a winding up proceeding, as discussed below.

33. Examples of the failure of the SSCC Executives to act in good faith include: (i) appearing on both sides of the transactions and business activities of Finance II; (ii) affirmatively failing to disclose the substance of the Intercompany Loan Agreement (until compelled to do so); (iii) disregarding the benefits of the ULC structure by treating the Intercompany Loan as equity instead of debt, after having reaped the tax advantages of not having to recognize interest on the Intercompany Loan for purposes of U.S. tax laws;[4] (iv) failing to diligently investigate and pursue the Deficiency Claim, Intercompany Claim and Related Party Claims; (v) failing to protect Finance II and assure that its interests are treated appropriately in the reorganization process both in the U.S. and in Canada; and (vi) failing to place Finance II into a winding up proceeding by filing for bankruptcy under the BIA in Canada.

34. The most disturbing examples of the failure of the SSCC Executives to proceed in good faith as to Finance II relate to the actions of the SSCC Executives toward the treatment of two of Finance II's major assets—the Deficiency Claim and the Intercompany Claim. With respect to the Deficiency Claim, and in contravention of the demands of Finance II's creditors, the SSCC Executives and common counsel[5] refused to place Finance II in a BIA proceeding.

---

[4] The Debtors' attempts during the Canadian proceedings (purportedly on behalf of Finance II) to recharacterize the Intercompany Claim as equity are particularly troubling because Finance II did not have counsel defending itself in connection with the proceedings before the Canadian Bankruptcy Court. Rather, Finance II's only lawyers of record in the Canadian proceedings argued vigorously that the Intercompany Loan was *equity*, apparently on behalf of SSC Canada and contrary to the interests of Finance II.

[5] Finance II and SSC Canada have engaged the same counsel—Sidley Austin LLP and Stikeman Elliott LLP—in connection with these cases and the prosecution of the Amended Plan and CCAA Plan. These counsel simply are unable to represent the best interests of Finance II because there is an actual conflict between Finance II,

Instead, SSCC and their common counsel actually *opposed* the Objecting Parties' request for a BIA proceeding in Canada.

35. With regard to the Intercompany Claim, Finance II's counsel has actively opposed the best interests of Finance II (which is still its client) and its creditors by arguing that the Intercompany Claim is equity, not debt. This is despite the fact that Finance II's assets are clearly maximized if the Intercompany Claim is treated as debt (which it was in all Canadian tax filings). The flagrant disregard of the SSCE Executives for their fiduciary duties to Finance II was clearly evidenced by conflicted counsel to Finance II and SSC Canada arguing on behalf of SSC Canada against the interests of Finance II during the Canadian proceedings on the issue of recharacterization while Finance II's *own officers* (and SSCC Executives) stood silent and watched. Finance II made no arguments on its own behalf because counsel to *both* Finance II and SSC Canada argued on behalf of SSC Canada and did not (and *could not* because of its conflicts) advocate on behalf of Finance II. Canadian counsel has clearly placed the interests of SSC Canada—and its own interests—above those of Finance II.

## B. The Proposed Amended Plan Is Not Viable

36. The Amended Plan continues this pattern of disadvantaging Finance II for the benefit of the Smurfit corporate group. The Debtors go to elaborate lengths to set up barriers to recovery on Finance II's two major assets—the Deficiency Claim and the Intercompany Claim—under the Amended Plan. Additionally, the Amended Plan is patently unconfirmable as to Finance II. First, the Amended Plan violates section 1129(a)(3) because it was not proposed in good faith. Second, it incorporates impermissible release, exculpation and injunction provisions

---

on the one hand, and the other Debtors, especially SSCC, SSCE and SSC Canada, on the other. Finance II has not been represented in connection with the proceedings before this Court, including the negotiation and prosecution of the Amended Plan, or in connection with the proceedings before the Canadian Bankruptcy Court, including the negotiation and prosecution of the CCAA Plan and the litigation related to the Deficiency Claim, Intercompany Claim and Related Party Claims before the Canadian Bankruptcy Court.

in favor of Finance II's officers and directors. Third, the Amended Plan violates the best interests test under section 1129(a)(7) of the Bankruptcy Code. Fourth, there likely will be no non-insider impaired accepting class at Finance II, as required under section 1129(a)(10) of the Bankruptcy Code. And finally, the Amended Plan cannot satisfy the requirements for cramdown under section 1129(b) of the Bankruptcy Code.

### (i) THE AMENDED PLAN WAS NOT PROPOSED IN GOOD FAITH

37. The Amended Plan was not proposed in good faith in accordance with section 1129(a)(3) of the Bankruptcy Code. Although Finance II has no operations, no employees and no on-going business, it is the purported proponent of a joint plan of reorganization that fails to maximize the value of its estate by disregarding the Deficiency Claim, Intercompany Claim and Related Party Claims. The proposed sale process also fails to satisfy the heightened scrutiny given to an insider sale. Lastly, the Debtors improperly seek to evade SSC Canada's $200 million obligation to Finance II by treating the Intercompany Claim as equity, in contravention of section 510(b) of the Bankruptcy Code.

### (ii) THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS RENDER THE AMENDED PLAN UNCONFIRMABLE

38. The proposed Amended Plan provides for the release, exculpation and injunction provisions in favor of Finance II's officers and directors when the colorable Related Party Claims exist against them as a result of the abdication of their fiduciary duties to Finance II and its creditors. These third-party releases cannot be approved over the objection of an affected creditor regardless of whether such creditor's class accepts the plan.

### (iii) THE AMENDED PLAN VIOLATES THE BEST INTERESTS TEST

39. As to Finance II, the Amended Plan violates the best interests test under section 1129(a)(7) of the Bankruptcy Code. Creditors of Finance II would receive a greater recovery on

their claims against Finance II in a liquidation than they will under the proposed Amended Plan. In its chapter 11 case, Finance II is not seeking to maximize its recovery on the Deficiency Claim, Intercompany Claim and Related Party Claims, each of which would benefit creditors of Finance II; in a chapter 7 case, an independent fiduciary charged with maximizing the value of Finance II's estate would assert and/or pursue each of those claims.

### (iv) THERE WILL BE NO NON-INSIDER IMPAIRED ACCEPTING CLASS

40. There is no non-insider impaired accepting class at Finance II, which is required under section 1129(a)(10) of the Bankruptcy Code. Class 18(C), which is comprised mainly of the direct claims of the holders of the Notes, is the only voting class at Finance II and will vote against the Amended Plan.

### (v) THE AMENDED PLAN CANNOT SATISFY THE CRAMDOWN REQUIREMENTS OF SECTION 1129(B)

41. Finally, the Amended Plan does not satisfy the requirements for cramdown under section 1129(b) of the Bankruptcy Code. The Amended Plan blatantly and unfairly discriminates against Finance II and its creditors. This is immediately apparent in the convoluted classification scheme the Debtors have created, which separately classifies both the Deficiency Claim (Class 2F) and the Intercompany Claim (Class 15F) as barriers to recovery and a means of disenfranchising Finance II. As described above, unfair discrimination is also apparent in the treatment received by Finance II and its creditors under the Amended Plan. The Amended Plan also appears to violate the fair and equitable rule incorporating the absolute priority rule, to the extent that holders of Interests in SSCE are unimpaired and will receive or retain property and the Deficiency Claim has not been adjudicated and/or Allowed.

DEL 86,299,300v9

17

## IV. FINANCE II HAS HAD MORE THAN SUFFICIENT TIME TO DEVELOP ITS PLAN

42. Finance II's case is simple and straightforward and there are no unresolved contingencies that would justify an extension of its Exclusive Periods. While the Consolidated U.S. Debtors have had more than sufficient time to demonstrate good-faith progress in the negotiation and prosecution of a viable plan of reorganization for Finance II, they have used the last twelve months to do the bidding of the SSCC Executives by becoming a proponent of the Amended Plan, which, as discussed above, has not been proposed in good faith and is unconfirmable on its face as to Finance II.

## V. THE CONSOLIDATED U.S. DEBTORS ARE (A) IMPROPERLY SEEKING AN EXTENSION OF THE EXCLUSIVE PERIODS FOR FINANCE II IN ORDER TO PRESSURE THE OBJECTING PARTIES TO SUBMIT TO THEIR REORGANIZATIONAL DEMANDS AND (B) NOT NEGOTIATING WITH THE OBJECTING PARTIES

### A. The Consolidated U.S. Debtors Are Improperly Seeking an Extension in Order to Pressure the Objecting Parties

43. The Consolidated U.S. Debtors are seeking an extension of the Exclusive Periods with respect to Finance II solely in an attempt to force the Objecting Parties to negotiate a plan that is not acceptable or appropriate to Finance II. Instead of negotiating a plan that is appropriate to Finance II, the SSCC Executives are seeking to eliminate the Deficiency Claim, Intercompany Claim and Related Party Claims and thereby sacrifice Finance II's assets for the benefit of the remaining Consolidated U.S. Debtors. Examples of this coercion include the proposed treatment in the Amended Plan of the Deficiency Claim, which will receive a recovery only if holders of the direct claims against Finance II in respect of the Notes vote to accept an unspecified settlement amount and the Intercompany Claim is not treated either as equity or

subordinated. Similarly, the separate classification of the Intercompany Claim against SSC Canada is designed to disenfranchise Finance II and prevent its recovery against SSC Canada.

### B. The Consolidated U.S. Debtors Are Not Negotiating with the Objecting Parties

44. The Consolidated U.S. Debtors refer to a "cooperative framework" that simply does not exist with respect to Finance II. Mot. ¶ 24. Finance II has not engaged in negotiations of any kind with the Objecting Parties and Finance II has effectively been unrepresented by its common counsel with the Consolidated U.S. Debtors.

## CONCLUSION

45. Because Finance II is unable to make and has not made any meaningful progress on restructuring initiatives, "cause" does not exist for extending the Exclusive Periods with respect to Finance II. *In re Sharon Steel Corp.*, 78 B.R. 762, 764 (Bankr. W.D. Pa. 1987) ("[S]ection [1121] was designed to strike a balance between the rights and obligations of a debtor in possession and its creditors. Congress intended the balance to lead to efficient negotiations and appropriate administration of the Chapter 11 case.") (internal citation omitted). Therefore, considering all the factors in this case, Debtors cannot show cause to grant any further extension of the Exclusive Periods with respect to Finance II. Accordingly, the Consolidated U.S. Debtors' Motion should be denied as to Finance II, and instead, this Court should allow the current Exclusivity Periods to lapse.

WHEREFORE the Objecting Parties respectfully request that this Court deny the Exclusivity Motion as to Finance II, and grant such other and further relief as is just and appropriate.

Dated: January 7, 2010
Wilmington, Delaware

GREENBERG TRAURIG, LLP

*/s/ Max Riffin*

Scott D. Cousins (DE Bar No. 3079)
Sandra G. M. Selzer (DE Bar No. 4283)
T. Max Riffin (DE Bar No. 5225)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
cousinss@gtlaw.com
selzers@gtlaw.com

-and-

Bruce R. Zirinsky
Nancy A. Mitchell
MetLife Building
200 Park Avenue
New York, New York 10281
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
zirinskyb@gtlaw.com
mitchelln@gtlaw.com

*Attorneys for Aurelius Capital Management, LP
And Columbus Hill Capital Management, L.P.*