UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SMURFIT-STONE CONTAINER CORPORATION, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10235 (BLS)<br><br>Jointly Administered<br><br>Hearing Date: June 22, 2010 at 2:00 p.m. (ET)<br>Objection Deadline: June 14, 2010 at 4:00 p.m. (ET) |

## MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) FURTHER EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), further extending the exclusive periods during which only the Debtors may (i) file a chapter 11 plan of reorganization and (ii) solicit acceptances of such plan of reorganization. In support of this Motion, the Debtors respectfully state as follows:

### INTRODUCTION

Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which the debtor has the exclusive

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Smurfit-Stone Container Corporation (1401), Smurfit-Stone Container Enterprises, Inc. (1256), Calpine Corrugated, LLC (0470), Cameo Container Corporation (5701), Lot 24D Redevelopment Corporation (6747), Atlanta & Saint Andrews Bay Railway Company (0093), Stone International Services Corporation (9630), Stone Global, Inc. (0806), Stone Connecticut Paperboard Properties, Inc. (8038), Smurfit-Stone Puerto Rico, Inc. (5984), Smurfit Newsprint Corporation (1650), SLP Finance I, LLC (8169), SLP Finance II, LLC (3935), SMBI Inc. (2567), Smurfit-Stone Container Canada Inc. (3988), Stone Container Finance Company of Canada II (1587), 3083527 Nova Scotia Company (8836), MBI Limited/Limitée (6565), Smurfit-MBI (1869), 639647 British Columbia Ltd. (7733), B.C. Shipper Supplies Ltd. (7418), Specialty Containers Inc. (6564), SLP Finance General Partnership (9525), Francobec Company (7735), and 605681 N.B. Inc. (1898). The Debtors' corporate headquarters are located at, and the mailing address for each Debtor is, 222 North LaSalle Street, Chicago, Illinois 60601.

right to file a plan of reorganization (the "Exclusive Filing Period"). Furthermore, section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan of reorganization within the Exclusive Filing Period, it has an exclusive period of 180 days from the commencement of the chapter 11 case to solicit acceptances of and confirm such a plan of reorganization (the "Exclusive Solicitation Period"). The initial Exclusive Filing Period in these chapter 11 cases extended through May 26, 2009, while the initial Exclusive Solicitation Period extended through July 24, 2009.

On May 1, 2009, the Debtors filed their Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 855] (the "First Extension Motion"). On May 18, 2009, the Court approved the relief requested in the First Extension Motion when it entered the Order Pursuant to 11 U.S.C. § 1121(d) Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 954] (the "First Extension Order"), pursuant to which the Exclusive Filing Period was extended through and including September 23, 2009 and the Exclusive Solicitation Period was extended through and including November 23, 2009.

On August 24, 2009, the Debtors filed their Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 1715] (the "Second Extension Motion"). On September 9, 2009, the Court approved the relief requested in the Second Extension Motion when it entered the Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 1891] (the "Second Extension Order"), pursuant to which the Exclusive Filing

Period was extended through and including January 21, 2010 and the Exclusive Solicitation Period was extended through and including March 23, 2010.

On December 28, 2009, the Debtors filed their Motion for an Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 3475] (the "<u>Third Extension Motion</u>" and with the First Extension Motion and the Second Extension Motion, the "<u>Extension Motions</u>"). On January 14, 2010, over the objection of Aurelius Capital Management, LP and Columbus Hill Capital Management, L.P., the Court approved the relief requested in the Third Extension Motion when it entered the Order Pursuant to 11 U.S.C. § 1121(d) Further Extending the Exclusive Periods Within Which the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof [Docket No. 4141] (the "<u>Third Extension Order</u>"), pursuant to which the Exclusive Filing Period was extended through and including May 21, 2010 (the "<u>Current Filing Period</u>") and the Exclusive Solicitation Period was extended through and including July 21, 2010 (the "<u>Current Solicitation Period</u>" and together with the Current Filing Period, the "<u>Current Exclusivity Periods</u>").

Section 1121(d) of the Bankruptcy Code permits the Court to extend the exclusivity periods "for cause," but not longer than 18 months after the petition date on the front end and 20 months after the petition date on the back end. By this Motion, the Debtors request that (i) the Current Filing Period be further extended by sixty-seven (67) days, through and including July 26, 2010, and (ii) the Current Solicitation Period be further extended by sixty-eight (68) days, through and including September 26, 2010, the statutory maximums allowable pursuant to section 1121(d) of the Bankruptcy Code. The Debtors do not request that the proposed extension be applicable to Stone Container Finance Company of Canada II ("<u>Stone FinCo II</u>"), one of the

Debtors in these chapter 11 cases. For the reasons set forth herein, the Debtors submit that ample "cause" exists to grant such extensions.

## STATUS OF THE CASE AND JURISDICTION

1. On January 26, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On January 27, 2009, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On February 5, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006(b).

## BACKGROUND OF THE DEBTORS

5. Smurfit-Stone Container Corporation ("SSCC") is a holding company that conducts its business operations through its wholly-owned subsidiary Smurfit-Stone Container Enterprises, Inc. ("SSCE"), the surviving entity from the November 1998 merger of Jefferson Smurfit Corporation and Stone Container Corporation. SSCE is the direct or indirect parent company of all of the other Debtors and their respective non-debtor affiliates (collectively with SSCC and SSCE, the "Company"). The Company is one of the leading integrated manufacturers

of paperboard and paper-based packaging in North America and is one of the world's largest recyclers of paper. The Company sells a broad range of paper-based packaging products, including containerboard, corrugated containers, kraft paper, and point of purchase displays, to a broad range of manufacturers of industrial and consumer products.

6. The Company operates more than 150 manufacturing facilities that are primarily located in the United States and Canada, including paper mills, container plants, wood harvesting facilities and reclamation plants. The Company employs approximately 18,000 employees.

7. The Company's financial performance depends primarily upon the market demand for its products and the prices that it receives for such products. The downturn in the global economy resulted in an unprecedented decline in demand for the Company's products, leading to increased inventory levels and downward pressure on the Company's operating income. At the same time, substantial price competition and volatility in the pulp and paper industry resulted in decreased prices for the Company's products which, coupled with the Company's leveraged financial position and volatility in energy prices and the cost of raw materials, adversely impacted the Company's financial performance. In addition, dramatic changes in the capital markets adversely impacted the Company's prospects for refinancing its revolving credit and securitization facilities. Because of these factors, the Debtors found it necessary to commence these chapter 11 cases.

8. On the Petition Date, following the commencement of these chapter 11 proceedings, certain of the Debtors – including Smurfit-Stone Container Canada Inc., a wholly-owned subsidiary of SSCE, and certain of its affiliates (collectively, the "Cross-Border

5

YCST01:9690469.1 068063.1001

Debtors")[2] – applied for protection from their creditors in Canada pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA") or other insolvency laws in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"). On the Petition Date, the Canadian Court issued an order that, *inter alia*, imposed a stay of all proceedings (the "CCAA Stay") against the Cross-Border Debtors and their property in Canada.

## SIGNIFICANT DEVELOPMENTS DURING THE CURRENT FILING PERIOD[3]

9. During the Current Filing Period, the Debtors received approval of the Debtors' Disclosure Statement for Joint Plan of Reorganization for Smurfit-Stone Container Corporation and its Debtor Subsidiaries and Plan of Compromise and Arrangement for Smurfit-Stone Container Canada Inc. and Affiliated Canadian Debtors (as supplemented, revised and modified, the "Disclosure Statement") pursuant to the Order (I) Approving the Disclosure Statement, (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Plan of Reorganization, (III) Scheduling a Hearing to Consider Confirmation of the Debtors' Joint Plan of Reorganization and Establishing Notice and Objection Procedures in Respect Thereof and (IV) Granting Related Relief, entered on January 29, 2010 [Docket No. 4534] (the "DS/Solicitation Order"). On February 4, 2010, the Debtors filed revised versions of the Disclosure Statement [Docket No. 4735] and the Joint Plan of Reorganization for Smurfit-Stone Container Corporation and its Debtor Subsidiaries and Plan of

---

[2] The Cross-Border Debtors are Smurfit-Stone Container Canada Inc., Stone Container Finance Company of Canada II, 3083527 Nova Scotia Company, MBI Limited/Limitée, Smurfit-MBI, 639647 British Columbia Ltd., B.C. Shipper Supplies Ltd., Specialty Containers Inc., SLP Finance General Partnership, Francobec Company, and 605681 N.B. Inc. Smurfit-MBI and SLP Finance General Partnership did not apply for protection under the CCAA but did receive certain relief under the CCAA Initial Order, including all protections of the CCAA Stay. In addition, Smurfit-MBI, SLP Finance General Partnership and the other Cross-Border Debtors sought and received recognition of their respective Chapter 11 Cases in the Canadian Court under Section 268 of the Bankruptcy and Insolvency Act, R.S.C. 1985 c. B-3.

[3] For a detailed description of all significant post-petition developments, please see the Extension Motions and the Disclosure Statement (as defined herein) [Docket No. 4735].

Compromise and Arrangement for Smurfit-Stone Container Canada Inc. and Affiliated Canadian Debtors [Docket No. 4734] (the "Plan"). Within the strictures of the DS/Solicitation Order, the Debtors solicited acceptances of the Plan.

10. The confirmation hearings in these chapter 11 cases began on April 15, 2010 and concluded on May 4, 2010. The issues related to confirmation of the Plan, including with respect to valuation and the various issues raised by the holders of the notes issued by Stone FinCo II, were painstakingly briefed by the Debtors and extensive argument, along with seven days of valuation testimony, were presented to the Court. Indeed, in connection with the Plan confirmation, the Debtors have filed approximately twenty different pleadings and affidavits and have appeared before the Court nine times. Those issues are currently pending a decision by the Court.[4]

11. On May 13, 2010, the Canadian Court sanctioned the Plan but stayed its implementation for twenty-one (21) days and further suspended its order for ten (10) days commencing on May 13, 2010.[5]

## RELIEF REQUESTED

12. By this Motion, the Debtors respectfully request, pursuant to section 1121(d) of the Bankruptcy Code, that (i) the Current Filing Period be further extended through

---

[4] In addition to obtaining approval of the Disclosure Statement and working towards confirmation of the Plan, during the Current Filing Period, the Debtors continued to restructure their operations by taking certain actions, including, but not limited to, rejecting numerous additional executory contracts and leases, assuming hundreds of executory contracts, continuing the sale of de minimis assets, continuing to reconcile thousands of claims against their estates and obtaining approval of exit term loan and revolving credit facilities. Furthermore, the Cross-Border Debtors have simultaneously continued to restructure their Canadian operations in their parallel CCAA proceedings. Up to date information on the CCAA proceedings can be found at the CCAA Monitor's website at www.deloitte.com/ca/smurfitstonecanada.

[5] Justice Pepall's Reasons for Decision regarding the sanctioning of the Plan were filed with this Court on May 13, 2010 [Docket No. 7627].

and including July 26, 2010 and (ii) the Current Solicitation Period be further extended through and including September 26, 2010.

## BASIS FOR RELIEF REQUESTED

**(i) Section 1121(d) of the Bankruptcy Code Authorizes the Court to Extend the Current Exclusivity Periods "For Cause"**

13. The objective of a chapter 11 reorganization case is the negotiation, formulation, development, confirmation and consummation of a confirmable plan of reorganization, and it is the intention of the Debtors to achieve that objective. The exclusive periods under section 1121(d) are intended to afford the debtor a full and fair opportunity to formulate and propose such a plan of reorganization and to solicit acceptances thereof without the disruption that might be caused by the filing of competing plans of reorganization by non-debtor parties. In order to provide the debtor with such a full and fair opportunity, section 1121(d) allows the court to extend the debtor's exclusive periods for "cause":

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

14. It is well established that the decision to extend a debtor's exclusive periods is committed to the sound discretion of the court and should be based upon the facts and circumstances of a particular case. See First Am. Bank of New York v. Southwest Gloves and

Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); 203 N. LaSalle Street P'ship v. Bank of Am., N.A., 1999 U.S. Dist. LEXIS 19425, at *12 (N.D. Ill. 1999); In re Mid-State Raceway, Inc., 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); In re Reetz, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance. See In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics, Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Such legislative history indicates that Congress did not intend that the 120- and 180-day exclusive periods be a hard and fast limit. See Amko Plastics, Inc., 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [section 1121(d)] is flexibility"). Rather, Congress intended that the debtor's exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate and draft a viable plan without the disruptions that would occur with the filing of competing plans of reorganization. See Geriatrics Nursing Home v. First Fidelity Bank, N.A., 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business."). Further, Congress recognized that often a 120-day exclusive period will not afford a debtor sufficient time to formulate and negotiate a plan of reorganization:

> [t]he court is given the power, though, to increase . . . the 120-day period depending on the circumstances of the case. [T]he bill allows the flexibility for individual cases that is not available today. For example, if an unusually large company were to seek reorganization under chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.

9

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (emphasis added) (footnotes omitted); see also In re Amko Plastics, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of ... [section 1121(d)] is flexibility").

### (ii) Cause Exists to Extend the Current Exclusivity Periods in These Chapter 11 Cases

15. When determining whether cause exists for an extension of a debtor's exclusive periods, courts rely on a variety of factors, each of which may provide sufficient grounds for extending the periods. Factors considered by the courts in making such a determination include: (a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist. See, e.g., Cont'l Cas. Co. v. Burns & Roe Enters., Inc., 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989); In re R.G. Pharmacy, Inc., 374 B.R. 484, 487 (Bankr. D. Conn. 2007); In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re Central Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re Dow Corning Corp., 208 B.R. 661, 665-66 (Bankr. E.D. Mich. 1997); In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Grand Traverse Dev. Co. Ltd. P'ship, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); In re Southwest Oil Co. of Jourdanton, Inc., 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987). Each factor that is relevant to these cases supports the relief requested herein.

16.  <u>The Size and Complexity of the Cases</u>.  The Debtors' chapter 11 cases qualify as "large and complex" by any objective measure.  These jointly-administered cases consist of twenty-five (25) individual Debtors operating one of the leading paperboard and paper-based packaging manufacturers in North America, with significant cross-border operations and a complex capital structure.  According to the Debtors' most recent operating report, for the period ending March 31, 2010, the Debtors had over $5 billion in assets.  Indeed, the size and complexity of the Debtors' cases is reflected in much of what has transpired in these proceedings during the last 16 months.  A review of the Plan and the related Disclosure Statement, and the extensive litigation in the recent months, makes it apparent that these chapter 11 cases are highly complex.  Furthermore, the Debtors have had nine days of confirmation hearings and have filed hundreds of pages of briefing and findings of fact and conclusions of law, further demonstrating the complexity of the Debtors' cases.

17.  Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive period to file a plan and solicit acceptances of such a plan.  <u>See</u> H.R. No. 95-595, at 231-232, 406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement"); <u>see also</u> <u>In re Texaco, Inc.</u>, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods").  Here, the size and complexity of the Debtors' cases support the requested additional extension of the Current Exclusivity Periods.

18. <u>The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information</u>. The Debtors believe that the Plan is confirmable in its current form. However, the Debtors require the ability to react to any issues raised by the decision ultimately rendered by the Court on the confirmation of the Plan. By continuing exclusivity, any further process required as a result of the Court's ruling will be able to continue in a focused and efficient manner.

19. <u>The Existence of Good Faith Progress Toward Reorganization</u>. The filing of the Plan and the Disclosure Statement was the result of the good faith process the Debtors began on the Petition Date. The Debtors and the Committee have argued extensively to confirm the Plan and have taken all the necessary steps and complied with all the necessary requirements of the Bankruptcy Code for confirmation of the Plan. This demonstrates that there has been good faith progress toward reorganization. The Debtors are not seeking the extension to delay administration of the chapter 11 cases or to exert pressure on their creditors. To the contrary, this request is intended to maintain a framework conducive to an orderly, efficient and cost-effective confirmation process, and specifically, to be able to address any remaining confirmation issues that may arise, exclusive from the distractions and attendant costs that could flow from competing plans of reorganization.

20. <u>The Debtors Are Paying Their Debts as They Come Due</u>. Courts considering whether to extend a debtor's exclusive periods may also assess whether the debtor is paying its debts when they come due. See In re McLean Indus., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). Together with funds on hand as of the Petition Date, funds generated through their regular business operations and the $750 million DIP Facility, the Debtors have sufficient liquidity to pay, and are paying, their undisputed post-petition obligations as such obligations come due. As of March 31, 2010, the Debtors had approximately $706.2 million in cash on hand

and the Debtors believe they have sufficient cash to fund these chapter 11 cases during the remaining few months. Furthermore, the Debtors have completely paid down any outstanding obligations under the DIP Facility approved during the "first-day" hearings. Moreover, the Debtors continue to manage their business operations effectively and are preserving the value of their estates for the benefit of their creditors.

21. <u>The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan</u>. The Debtors have already filed the Plan and believe it is confirmable in its current form. Extending the Current Exclusivity Periods will ensure that the Debtors will be able to address any final issues that may arise from the Court's decision on confirmation of the Plan.

22. <u>The Debtors Have Successfully Negotiated with Creditors</u>. As discussed above, the Debtors regularly consulted with their creditor constituencies and worked hard to establish cooperative and productive relationships with such constituencies and their professionals. Furthermore, the Debtors worked hand in hand with the Committee and other creditor constituencies in formulating the Plan and have extensively argued in support of the Plan.

23. <u>The Short Tenure of These Cases</u>. As discussed above, the Debtors have accomplished a substantial amount in 16 months, a relatively short period of time for such sizable and complex U.S. and cross-border cases. It is not uncommon for a further extension of the exclusivity periods to be requested in such large and complex cases. In light of the relatively short duration and complexity of these cases, the progress that the Debtors have made to date, and the expected confirmation of the Plan, the Debtors submit that an extension of the Current Exclusivity Periods is warranted.

24. <u>Termination of the Debtors' Exclusive Periods Would Adversely Impact These Cases</u>. This factor is of utmost importance in these chapter 11 cases. Termination of the Current Exclusivity Periods would adversely impact the Debtors' business operations and progress, especially at this post-confirmation hearing point in these chapter 11 cases. If this Court were to deny the Debtors' request for an extension of the Current Exclusivity Periods, any party in interest would be free to propose a plan of reorganization for each of the Debtors. This would deny the Debtors a fair opportunity to confirm the Plan as currently filed and the ability to make any further modifications to the Plan, to the extent necessary. Such a result would not advance the rehabilitative objectives of the chapter 11 process, but would instead thwart those objectives. Indeed, such a ruling would be destabilizing, fostering a chaotic environment during the final days of the Debtors' chapter 11 cases. Denying the relief requested herein could critically impair the Debtors' ability to successfully reorganize with no benefit to the Debtors' estates, creditors, employees, customers and other stakeholders. Furthermore, the filing of a competing plan of reorganization by another interested party would undoubtedly lead to tremendous litigation costs to the Debtors' estates.

25. <u>Unresolved Contingencies</u>. Although the Debtors believe their Plan resolves all contingencies in these chapter 11 cases, the lack of unresolved contingencies alone should not serve as a reason to terminate exclusivity. The Debtors seek the requested extensions solely to maintain the flexibility to address issues that may be raised with respect to the Plan, including making any modifications thereto to the extent the Court deems the Plan unconfirmable in its present state.

26. The Debtors respectfully submit that, under all of the relevant facts and circumstances, the requested extension of the Current Exclusivity Periods will not prejudice the

14
YCST01:9690469.1                                                                                           068063.1001

legitimate interests of any creditor and will provide the Debtors with a meaningful and reasonable opportunity to efficiently and cost effectively address any issues that arise in connection with confirmation of the Plan.

27. Based upon the foregoing, the Debtors submit that ample cause exists to extend the Current Exclusivity Periods in these bankruptcy proceedings pursuant to section 1121(d) of the Bankruptcy Code.

## APPLICATION OF LOCAL RULE 9006-2

28. Pursuant to Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Current Filing Period shall be automatically extended until such time as the Court has had the opportunity to consider this Motion.

## NOTICE

29. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel to the Committee; (vi) counsel to the agents for the Debtors' prepetition loan facilities; (vii) counsel to the agents for the Debtors' post-petition lenders; (viii) the indenture trustees for each series of the Debtors' pre-petition notes; and (ix) those parties entitled to notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested in this Motion, the Debtors submit that no other or further notice is required.

YCST01:9690469.1    068063.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order, in substantially the form attached hereto as <u>Exhibit A</u>, (i) extending the Exclusive Filing Period through and including July 26, 2010, (ii) extending the Exclusive Solicitation Period through and including September 26, 2010, and (iii) granting such other relief as is just and proper.

Dated: Wilmington, Delaware
       May 21, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
James F. Conlan
Matthew A. Clemente
Dennis M. Twomey
Bojan Guzina
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ATTORNEYS FOR THE DEBTORS
AND DEBTORS-IN-POSSESSION