IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SMURFIT-STONE CONTAINER | ) | Case No.  09-10235 (BLS) |
| CORPORATION, et al., | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾) | | Re: Docket No. 8211, 8278 |

Robert S. Brady
Edward L. Morton
YOUNG CONAWAY STARGATT &
TAYLOR
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

   -and-

James F. Conlan
Matthew A. Clemente
Dannis M. Twomey
Bojan Guzina
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603

-and-

Steven M. Bierman (argued)
Guy S. Neal (argued)
787 Seventh Avenue
New York, NY  10019

*Attorneys for Smurfit-Stone Container*

Scott D. Cousins
Dennis A. Meloro
GREENBERG TRAURIG, LLP
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

-and-

Bruce R. Zirinsky (argued)
Nancy A. Mitchell
200 Park Avenue
New York, NY  10281

-and-

Joseph P. Davis III (argued)
James P. Ponsetto
One International Place
Boston, MA 02110

*Attorneys for Green Hunt Wedlake Inc.,*
*Trustee in Bankruptcy of Stone Container*
*Finance Co. of Canada II*

Howard A. Cohen
DRINKER BIDDLE & REATH LLP
110 North Market Street, Suite 1000
Wilmington, DE 19801

-and-

Kristin K. Going (argued)
1500 K Street, N.W., Suite 1100
Washington, D.C.  20005

*Attorneys for Manufacturers and Traders*
*Trust Co., as Indenture Trustee for the*
*7.375% Senior Notes*

## OPINION[1]

The matter before the Court concerns the objection of Smurfit-Stone Container Enterprises ("SSCE") and its affiliated debtors in possession (collectively, the "Debtors") to the proof of claim filed by Green Hunt Wedlake Inc. ("Wedlake"), as the Canadian Bankruptcy Trustee of Stone Container Finance Company of Canada II ("Finance II"). For the following reasons, the Court will sustain the Debtors' objection and disallow Wedlake's claim.

## I.  BACKGROUND

The Debtors are one of the leading integrated manufacturers and recyclers of paperboard and paper-based packaging in North America, with significant operations in Canada and the United States. SSCE is the direct or indirect parent company of each of the Debtors and Finance II. Finance II incorporated on July 7, 2004 under the Nova Scotia Act Respecting Joint Stock Companies (the "Companies Act") as an unlimited liability company ("ULC"), defined by the Companies Act as "a company not having any limit on the liability of its members." Companies Act § 9(c). Finance II is a wholly-owned subsidiary of SSCE and SSCE is Finance II's sole member.

On January 26, 2009, the Debtors filed petitions for relief pursuant to Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. On even date therewith, certain of the Debtors filed for protection from their creditors in Canada under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (the "CCAA") in the Ontario Superior Court of Justice (Commercial List).

---

[1]    This Opinion constitutes the findings of facts and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

On December 1, 2009, the Debtors filed a joint plan of reorganization (as amended, the "Plan") and related disclosure statement with this Court. [Docket Nos. 2914, 2915.] The Plan generally provides for a restructuring of the U.S. and Canadian Debtors in both the Chapter 11 cases and the CCAA proceedings. In the final version of the Plan, Finance II was withdrawn as a Plan proponent. [See Docket No. 6878.] On June 21, 2010, this Court held a hearing regarding Plan confirmation (the "Confirmation Hearing") and entered an Order confirming the Plan. [Docket No. 8107.]

Shortly thereafter, on June 24, 2010, the Supreme Court of Nova Scotia issued an order adjudging Finance II bankrupt and appointing Wedlake as trustee of the estate of Finance II. In its trustee role, Wedlake is the legal representative of Finance II. Based on these and other facts and circumstances, and on motion of the Debtors, this Court has dismissed Finance II's Chapter 11 case. [See Docket Nos. 8480, 8547.]

On July 13, 2010, Wedlake, on behalf of Finance II, filed a proof of claim asserting a general unsecured claim in the amount of $222,647,120 plus certain unliquidated amounts against SCCE [Docket No. 8211] (the "Wind-Up Claim"). Wedlake asserts the Wind-Up Claim pursuant to section 135 of the Companies Act ("Section 135"), which provides, in part:

> In the event of a [ULC] being wound up, every present and past member shall, subject to this Section, be liable to contribute to the assets of the company to an amount sufficient for the payment of its debts and liabilities and the costs . . . of the winding up . . .

Companies Act § 135. As a result of this provision, Wedlake asserts that SSCE, as Finance II's sole member, is liable to contribute to Finance II's estate an amount sufficient to pay Finance II's debts and liabilities, including the costs and expenses related to its CCAA proceeding.

The majority of Finance II's allegedly unpaid liabilities are the result of an outstanding balance of $222,287,573 due to holders (the "Noteholders") of certain 7.375% Senior Notes due

July 15, 2014 (the "Notes").  (See M&T's Br. Ex. A.) [Docket No. 8604.]  The Notes were

issued by Finance II in 2004 pursuant to the terms and conditions of an Indenture, dated July 20,

2004 (the "Indenture") (See Wedlake's Br. Ex. B, § 11.09.) [Docket No. 8448.]  Manufacturers

and Traders Trust Company ("M&T") is the successor trustee under the Indenture.

Although the Notes are unsecured, SSCE (as successor to Stone Container Corp.) fully

guaranteed repayment of the Notes (the "Guarantee").  Consequently, the Noteholders asserted a

claim against SSCE on account of liabilities related to the Guarantee (the "Guarantee Claim").

The Noteholders were involved in the Canadian Debtors' CCAA proceedings and in the process

leading up to the confirmation of the Debtors' Plan in this Court.  Following the Confirmation

Hearing, SSCE made a distribution to the Noteholders on account of the Guarantee Claim, which

was a general unsecured claim entitled to a pro rata distribution pursuant to the terms of the

Plan.[2]  Despite the Noteholder's distribution on the Guarantee Claim, following the Confirmation

Hearing, Wedlake asserted the Wind-Up Claim for, inter alia, amounts allegedly due under the

Notes.  Wedlake asserts that SSCE's distribution on the Guarantee Claim is of no moment

because "[t]he Wind-Up Claim and the Guarantee Claim are different claims owed to distinct

entities, and both claims are entitled to be fully asserted until the Noteholders are paid in full,

including pre-petition and post-petition interest." (Wedlake Br. 43.) [Docket No. 8448.]

The present dispute regarding the Wind-up Claim relates largely to the effect of section

11.09 of the Indenture, which states:

> NO RECOURSE AGAINST OTHERS.  No recourse for the
> payment of the principal of, premium, if any, or interest . . . in
> respect of any of the Notes, or for any claim based thereon or
> otherwise in respect thereof, and no recourse under or upon any

---

[2]    The record developed in these cases and at the Confirmation Hearing established that
distributions to the Noteholders on account of the Guarantee Claim were made in stock of the
Reorganized Debtors with a value estimated to be not less than $0.70 on the dollar.

4

> obligation, covenant or agreement of [Finance II] or [SSCE] contained in this Indenture or in any of the Notes, or because of the creation of any Indebtedness represented thereby, <u>shall be had against any</u> incorporator or against any past, present or future partner, <u>stockholder, other equityholder</u>, officer, director, employee or controlling person, as such, <u>of [Finance II]</u>, [SSCE], or any successor Person, either directly or through [Finance II], SSCE or any successor Person, <u>whether by virtue of any constitution, statute or rule of law</u>, or by the enforcement of any assessment or penalty or otherwise; it being expressly understood that all such liability is hereby expressly waived and released as a condition of, and as a consideration for, the execution of this Indenture and the issue of the Notes.

Indenture § 11.09 (emphasis added).  As discussed in detail below, SSCE contends that the above "No Recourse Provision" eliminates any liability SSCE would otherwise have on account of the Wind-Up Claim.

On July 27, 2010, the Debtors filed an objection to the Wind-Up Claim [Docket No. 8278] (the "Objection") asserting, in part, that section 11.09 of the Indenture vitiates the Wind-Up Claim.  Approximately a month later, Wedlake responded with a memorandum in support of the Wind-Up Claim [Docket No. 8448].[3]  On September 24, 2010, the Debtors filed a memorandum in support of their Objection [Docket No. 8584].[4]  Thereafter, both Wedlake and M&T filed replies in support of the Wind-Up Claim [Docket Nos. 8602, 8604],[5] and finally, the Debtors filed a further reply in support of their Objection [Docket No. 8637].  On October 18, 2010, the Court heard extensive oral argument on the Objection.  This matter has been fully briefed and ripe for decision.

---

[3]     Cited herein as "Wedlake's Br."

[4]     Cited herein as "Debtors' Br."

[5]     Wedlake's reply is cited herein as "Wedlake's Resp. Br."

## II.  JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Objection constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III.  THE PARTIES' POSITIONS

### A.      The Debtors' Position

The Debtors assert that the Wind-Up Claim must be disallowed for two reasons: (1) the Wind-Up Claim is barred pursuant to the terms of the Indenture; and (2) the Wind-Up Claim is duplicative of the Guarantee Claim, upon which SSCE has already made a distribution, and double recovery on a single debt is impermissible.  In support of their first argument that the Indenture bars the Wind-Up Claim, the Debtors argue that the Indenture's No Recourse Provision bars claims against SSCE in its role as shareholder or equityholder of Finance II.  The Debtors recognize that members of Canadian ULC's may incur liability on account of a winding-up ULC's unpaid debts pursuant to provisions of the Companies Act.  However, the Debtors argue that Section 135(f) of the Companies Act allows parties to contractually waive such wind-up liability by including language such as the No Recourse Provision in their agreements.[6]

The Debtors further argue that the Indenture, the Notes, and the related offering documents clearly indicate that SSCE's only liability related to the Notes is on account of the

---

[6]      As further discussed below, Section 135(f) provides that:
> [N]othing in this Act shall invalidate any provision contained in any contract whereby the liability of the individual members of the contract is restricted, or whereby the funds of the company are alone made liable in respect of the policy or contract.

Companies Act § 135(f).

Guarantee, which can be paid without impairing or vitiating the release of the Wind-Up Claim provided in the No Recourse Provision.

In support of their second argument that the Wind-Up Claim is duplicative of the already-paid Guarantee Claim, the Debtors argue that the foundation for both claims is the failure to repay the Noteholders on the Notes.  The Debtors contend that Wedlake, as Finance II's representative, is acting for the sole benefit of the Noteholders and that any recovery on the Wind-Up Claim will flow directly to the Noteholders, as Finance II's primary creditors.  As the Noteholders have already been compensated for this loss pursuant to their distribution on the Guarantee Claim, the Debtors assert that the Noteholders may not recover again for the same injury by the operation of the Wind-Up Claim. Finally, the Debtors assert that if the Wind-Up Claim is allowed, it should be reduced by the distribution on the Guarantee Claim.

**B.**    **Wedlake's Position**

Wedlake contends that the Wind-Up Claim is not barred by the Indenture's No Recourse Provision and that the Wind-Up Claim is not duplicative of the Guarantee Claim.  As to its first argument that the No Recourse Provision does not bar the Wind-Up Claim, Wedlake contends that SSCE is a defined party in the Indenture and the No Recourse Provision is entitled "No Recourse Against Others."  As SSCE is a party to the Indenture, argues Wedlake, it cannot be an "other" for purposes of the No Recourse Provision.  In addition, Wedlake argues that SSCE is not specifically identified as included in the provision and that the provision does not otherwise apply to SSCE.  Wedlake also argues that the Debtors misconstrue the phrase "as such," and that if the No Recourse Provision releases SSCE at all, then it must operate to fully release SSCE, which would be an absurd result in light of the Guarantee.

7

In support of its second argument that the Wind-Up Claim is not duplicative of the paid Guarantee Claim, Wedlake argues that the two claims are asserted by different parties on account of distinguishable liabilities.  Wedlake maintains that it is asserting the Wind-Up Claim as bankruptcy trustee for Finance II on account of Finance II's wind-up liabilities.  The Guarantee Claim, on the other hand, was asserted by the Noteholders on account of SSCE's direct liability as guarantor of the Notes.  Therefore, argues Wedlake, the claims are not duplicative and both claims may be asserted without limitation until full payment is received.[7]

## IV. <u>DISCUSSION</u>

The burden of proof related to claims and claims' objections shifts between the proponent of, and objector to, a claim.  <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 173 (3d Cir. 1992); <u>In re United Cos. Fin. Corp.</u>, 267 B.R. 524, 527 (Bankr. D. Del. 2000).  If a claimant alleges facts sufficient to support its claim, then the claim is entitled to <u>prima</u> <u>facie</u> validity.  <u>See</u> <u>Allegheny</u>, 954 F.2d at 173 ("[A] claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward."); 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.").  A party objecting to a claim that is <u>prima</u> <u>facie</u> valid bears the burden to produce sufficient evidence that discredits at least one of the allegations essential to the claim's legal sufficiency.  <u>Allegheny</u>, 954 F.2d at 173-74.  In the event that the objector "produces sufficient evidence to negate one or more of the sworn facts in the proof of claim," the burden to demonstrate an entitlement to payment on its claim shifts back to the claimant.  <u>Id.</u> at 174.

---

[7]    M&T's arguments largely track or otherwise support Wedlake's arguments and the relief it requests.

8

Here, the Wind-Up Claim satisfies the relatively low threshold of Bankruptcy Code

section 502(a).  As explained below, however, the Debtors have provided evidence sufficient to

negate the statutory presumption of validity.  As further explained below, Wedlake has failed to

carry its burden to establish its entitlement to allowance and payment of the Wind-Up Claim.

Accordingly, the Objection will be sustained and the Wind-Up Claim will be disallowed as

provided herein.

**A.     The Companies Act Coupled with the Indenture's No Recourse Provision
        Bars the Wind-Up Claim.**

Section 135 provides a mechanism for recovery from the members of a ULC upon the

winding up of a ULC, stating:

> In the event of a [ULC] being wound up, every present and past
> member shall, subject to this Section, be liable to contribute to the
> assets of the company to an amount sufficient for the payment of
> its debts and liabilities and the costs . . . of the winding up . . . with
> the qualifications following: . . .

Companies Act § 135.  These recovery rights, however, are limited by several qualifications

within Section 135, including subsection (f) which provides:

> [N]othing in this Act shall invalidate any provision contained in
> any contract whereby the liability of the individual members of the
> contract is restricted, or whereby the funds of the company are
> alone made liable in respect of the policy or contract.

Companies Act § 135.   The plain language of Section 135 expressly permits parties to

contractually restrict or waive statutory wind-up liabilities.   See id.  New York law, which

governs the Indenture, also allows contract parties to waive private statutory rights.[8]  Glengariff

Corp. v. Snook, 471 N.Y.S.2d 973, 977 (N.Y. Sup. Ct. 1984) ("The fact that there is a statute or

regulation in conflict with the terms of the contract does not necessarily render the contract void

---

[8]     The Indenture provides that, "[t]his Indenture and the Notes shall be governed by the
laws of the state of New York."  Indenture § 11.07.

automatically, since a party may waive a rule of law or a statute or even a constitutional provision enacted for his or her benefit or protection, so long as only a private right is involved."). There is no dispute that the Wind-Up Claim constitutes a private right. The crux of the dispute is whether the Indenture's No Recourse Provision waives the Wind-Up Claim. The disputed provision states, in relevant part:

> No recourse [related to the Notes or the Indenture] . . . shall be had against any incorporator or against any past, present or future partner, stockholder, other equityholder, officer, director, employee or controlling person, as such, of [Finance II], [SSCE], or any successor Person, either directly or through [Finance II], SSCE or any successor Person, whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise; it being expressly understood that all such liability is hereby expressly waived and released as a condition of, and as a consideration for, the execution of this Indenture and the issue of the Notes.

Indenture § 11.09.

New York applies the "fundamental, neutral precept of contract interpretation . . . that agreements are construed in accord with the parties' intent." Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002). New York courts further instruct that, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." Slamow v. Del Col, 594 N.E.2d 918, 919 (N.Y. 1992). Extrinsic evidence of intent will only be considered if two reasonable interpretations of a contract exist, thereby rendering the contract ambiguous. Greenfield, 780 N.E.2d at 170.

Accordingly, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Id, at 170. Standard contract provisions, colloquially referred to as boilerplate, are not subjected to a different analysis, but are enforceable according to their plain meaning if they are unambiguous. See Slamow, 594 N.E.2d

at 919 (finding that standard contract clauses should be enforced as written); <u>Sharon Steel Corp.</u>

<u>v. Chase Manhattan Bank, N.A.</u>, 691 F.2d 1039, 1049 (2d Cir. 1982) ("Interpretation of

indenture provisions is a matter of basic contract law."); <u>Pludeman v. N. Leasing Sys., Inc.</u>, 890

N.Y.S. 2d 370, at *7 (N.Y. Sup. 2009) ("Generally, a contract must be interpreted and enforced

according to the plain meaning of its unambiguous terms including its boilerplate provisions.").

The language of the No Recourse Provision, despite the parties differing interpretations,

is unambiguous, and the Court will not consider extrinsic evidence.  <u>Maxim Group, LLC v. Life</u>

<u>Partners Holdings, Inc.</u>, 690 F. Supp. 2d 293, 304 (S.D.N.Y. 2010) ("[A] contractual provision is

not rendered ambiguous simply because two interpretations are technically possible; both

interpretations must also be reasonable.").

### 1.    The No Recourse Provision Applies To SSCE in Its Role as an Equityholder of Finance II.

The first question before the Court is whether SSCE is an entity covered by the No

Recourse Provision, which applies to "any past, present or future partner, stockholder, other

equityholder, officer, director, employee or controlling person, as such, of [Finance II] . . . ."

Indenture § 11.09.  The Debtors argue that the No Recourse Provision applies to SSCE because

SSCE is a "stockholder" or "other equityholder" of Finance II.  Wedlake disagrees for several

reasons, including that New York law requires waivers and releases to be clearly stated to be

enforceable, and the No Recourse Provision does not clearly release SSCE in any capacity.

Wedlake also argues that the Debtors have misinterpreted the phrase "as such" in the No

Recourse Provision to mean "in the capacity of" and to apply to all listed entities.  Wedlake

contends instead that "as such" can only be read to qualify the single immediately preceding

entity, instead of each listed entity.  Finally, Wedlake argues that the title of the provision – "No

Recourse Against Others" - shows that SSCE is not a released party because, as a party to the Indenture, SSCE is not an "other."

        a.      *Wedlake Misconstrues the Phrase "As Such."*

Wedlake essentially parses the No Recourse Provision to only release claims against (1) any incorporator; (2) any past, present or future partner, stockholder, other equityholder, officer, director, employee; or (3) controlling person of Finance II or SSCE. By reading the phrase "as such" to modify only the "controlling person" category, Wedlake construes the release as to all other listed entities as open-ended and not limited to liability springing from those entities' different roles or relationships vis-à-vis Finance II. Wedlake then posits that the No Recourse Provision cannot include SSCE as a stockholder or other equityholder because that would produce the absurd result of releasing all SSCE liability related to the Notes, including the Guarantee Claim. Wedlake cites Univ. of Utah Hosp. and Med. Ctr. v. Bethke, 611 P.2d 1030, 1033 (Idaho 1980) for the proposition that the phrase "as such" is exemplary or illustrative, not exclusive.

The Debtors disagree and argue that the phrase "as such" modifies each listed entity and the No Recourse Provision therefore only releases liability for the listed entities that is the result of the entities' articulated affiliation with Finance II. Consequently, argue the Debtors, the No Recourse Provision releases the Wind-Up Claim, but does not affect the Guarantee Claim because the provision only releases claims asserted against SSCE solely in its capacity as a Finance II stockholder or other equityholder.

Courts often look to dictionary definitions to determine the plain meaning of words or phrases used in a contract. See Bianco v. Bianco, 830 N.Y.S.2d 21, 23 (N.Y. App. Div. 2007) ("Words and phrases used in an agreement must be given their plain meaning, and it common

practice for courts to refer to the dictionary in determining plain meaning"). The Oxford English Dictionary defines "as such" to mean: "[a]s being what the name or description implies, in that capacity." 1 <u>Oxford English Dictionary</u> 105 (2d ed. 2004). This definition supports the Debtors' argument that the phrase essentially means "in the listed capacity."

Moreover, a plain reading of the provision shows that "as such" modifies each listed entity, rather than solely the final entity. This is because "as such" follows a list of entities and is set off from the list by commas. See <u>A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.</u>, 663 N.E.2d 890, 893 (N.Y. 1996) ("[P]unctuation sets off the . . . clause from all of the enumerated categories of persons, indicating that it was intended to apply to each one."); <u>Podiatry Soc. of State of New York v. Regents of Univ. of the State of New York</u>, 358 N.Y.S.2d 276, 279 (N.Y. Spec. Term  1974) ("Notwithstanding the general rule of 'last antecedent', where general words appear at the end of a sentence and following several possible antecedents, they usually refer to, and modify, the whole sentence and not merely the last preceding antecedent.").

The foregoing garners further support from the canon of construction known as <u>noscitur a sociis</u>, which instructs that "the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." <u>Nellson Nutraceutical, Inc.</u>, 369 B.R. 787, 801 (Bankr. D. Del. 2007); Black's Law Dictionary 1160-61 (9th ed. 2009). "Of course <u>noscitur a sociis</u> is just an erudite (or some would say antiquated) way of saying what common sense tells us to be true: '[A] word is known by the company it keeps,'- that is to say, which of various possible meanings a word should be given must be determined in a manner that makes it 'fit' with the words with which it is closely associated." <u>Nellson</u>, 369 B.R. at 801 (citing <u>James v. United States</u>, 550 U.S. 192, 222, 127 S.Ct. 1586, 1605, 167 L.Ed.2d 532 (2007) (Scalia, J., dissenting)).

Given the intent of the No Recourse Provision as a whole and the words surrounding "as such," the Court can discern no particular logic in limiting the applicability of "as such" to the controlling person category.  Rather it appears that the objective of the No Recourse Provision - to provide a liability waiver for entities related to the issuer - applies with equal force to each listed entity.  Although the meaning of "as such" is abundantly clear under a plain meaning analysis, if the Court were to apply the doctrine of noscitur a sociis, it would determine that the logical "fit" of the phrase is to modify all preceding entities.

In addition, the Court does not find Wedlake's sole authority on the issue, Bethke, helpful.  In Bethke, the Idaho Supreme Court was interpreting the following definition of "hospital" in the Idaho Medical Indigent Statutes: "a facility licensed *as such* in Idaho providing community service for in-patient, medical and/or surgical care of acute illness or injury and/or obstetrics, and excluding state institutions." Bethke, 611 P.2d at 1033 (quoting I.C. § 31-3502(s)) (emphasis added).  The Bethke court determined that "[t]he words 'as such' indicate an exemplary use of the phrase as it applies to 'facility.' . . . Clearly, the phrase 'as such' is exemplary, not exclusive, so that it applies to hospitals licensed like those licensed in Idaho." Id. In reaching this conclusion, the court cited dictionary definitions of the terms "as" and "such" and reviewed the underlying legislative goals of the Idaho Medical Indigent Statutes.  See id. The court did not cite case law construing the phrase as a whole or definitions of the entire phrase.

This Court does not find Bethke compelling for several reasons.  First, the Bethke court's reading of "as such" within a statutory definition was colored by the court's understanding of the legislative intent underlying the pertinent statute.  See id. at 1032-33.  Such considerations are inapplicable here where the Court must construe a contract between private parties.  In addition,

the Bethke court interpreted "as such" in relation to the single term it followed.  See id.  The

Court here must interpret the phrase in relation to a list of entities.  The phrase in the No

Recourse Provision also differs syntactically from the phrase as construed in Bethke because in

the No Recourse Provision, the phrase is set off by commas.  See A.J. Temple Marble & Tile,

663 N.E.2d at 893.  Finally, Bethke does not appear to have been cited by any court for its

interpretation of "as such" and is distinguishable on its facts.

The cases cited by the Debtors construing "as such" in contract provisions similar to the

No Recourse Provision provide a better analogy and show that the phrase is generally interpreted

to effectuate a release for all enumerated entities in their roles vis-à-vis the indebted party.  See

Shenandoah Life Ins. Co. v. Valero Energy Corp., 1988 WL 63491, at *9 (Del. Ch. June 21,

1988); LaSalle Nat. Bank v. Perelman, 141 F. Supp. 2d 451, 455 (D. Del. 2001) (interpreting a

no recourse provision applying to "[a] director, officer, employee or stockholder, as such, of the

Company . . ." as potentially applicable to defendants who were parent corporations and officers

and directors of the issuers);[9] Simons v. Cogan, 549 A.2d 300, 305 n.2 (Del. 1988) (determining

that "[t]he meaning of [a] 'no recourse' provision" that applied to "any incorporator, or against

---

[9]     LaSalle is one of several decisions finding that no recourse provisions only apply to
contract-based claims and not to equitable claims.  LaSalle, 141 F. Supp. 2d at 462; see also
Geyer v. Ingersoll Publ. Co., 621 A.2d 784, 792 n.6 (Del. Ch. 1992); Bankers Trust Co. v. Hale
and Kilburn Corp., 84 F.2d 401, 405 (2d Cir. 1936).  The reasoning behind these decisions is that
"the directors of an issuer should not be able to immunize themselves from a future breach of
fiduciary duties or fraudulent conduct through a provision in the trust indenture."  U.S. Bank
Nat. Ass'n v. U.S. Timberlands Klamath Falls, L.L.C., 2004 WL 5388052, at *13 (Del. Ch. Dec.
22, 2004).  These cases are distinguishable from the case at bar, however, because the courts
were comparing breach of contract claims to equitable or tortious claims, and were not
construing statutory claims.  These courts also appear to include claims for non-payment as
contractual claims covered by the no recourse provisions, regardless of the plaintiffs'
characterization of their claims.  See LaSalle, 141 F. Supp. 2d at 462.  These cases therefore do
not compel the result Wedlake desires because Wedlake has not asserted fraud, tort, or breach of
fiduciary duty claims and the Wind-Up Claim is based on liabilities resulting from financial
obligations related to repayment of the Notes.

any stockholder, officer or director, as such, past, present or future, of the Company" was "clear – it extends broad immunity to stockholders, directors and officers of the issuing corporation.").

In <u>Shenandoah</u>, certain former noteholders brought claims against an issuing company, its parent company, certain related companies, and an officer of the company.  The Delaware Court of Chancery determined that a no recourse provision in the relevant indenture that negated liability for "incorporators, stockholders, officers or directors, as such, of the Company" was "effective to limit any liability that may be found to the issuer."  1988 WL 63491, at *9.  Accordingly, as an alternative basis for relief, the court stated that it would "grant the motion [to dismiss] of the defendants who are officers, directors, stockholders or successors to the issuer based on the conclusive legal effect of [the no recourse provision]."  <u>Id.</u>  The court limited its determination to the defendants other than the issuer's related companies, but importantly, applied the no recourse provision to the issuer's parent company.  <u>Id.</u> at *9 n.6.  The provision in <u>Shenandoah</u> is very similar to the Indenture's No Recourse Provision here and the Court finds <u>Shenandoah</u> instructive.

In sum, considering the plain meaning of "as such," the syntax of the No Recourse Provision, and the above-cited law, the Court agrees with the Debtors.  The plain meaning of the phrase "as such" as it is used in the Indenture, and the broad language of the No Recourse Provision, evidence an intent to release entities within the listed categories from all liability related to the Indenture and Notes that may otherwise attach by virtue of their roles as stockholders or equityholders of Finance II.  <u>See</u> <u>A.J. Temple Marble & Tile</u>, 663 N.E.2d at 893 ("Where, as here, a descriptive or qualifying phrase follows a list of possible antecedents, the qualifying phrase generally refers to and modifies all of the preceding clauses."); <u>Podiatry Soc.</u>, 358 N.Y.S.2d at 279 (same); <u>Matter of Estate of Bourcet</u>, 668 N.Y.S.2d 329, 330 (N.Y. Sur. Ct.

16

1997) ("Where general words appear at the end of a sentence and follow several possible antecedents, they usually refer to and modify the whole sentence and not merely the last preceding antecedent.").

The Court also rejects Wedlake's argument that because Section 11.09 is entitled "No Recourse Against *Others*" and SSCE is a party to the Indenture, the No Recourse Provision does not apply to SSCE.  The Indenture specifically provides that "[t]he . . . headings of the Articles and Sections of this Indenture have been inserted for convenience of reference only, are not to be considered a part hereof and shall in no way modify or restrict any of the terms and provisions hereof."  Indenture § 11.13.  As a result, the title of Section 11.09 does not require a finding that the No Recourse Provision does not apply to SSCE, particularly where the operative text provides otherwise.

        b.     *SSCE is an "Other Equityholder" of Finance II, as the Term is Used in the No Recourse Provision.*

Wedlake's second line of argument is that regardless of how the Court interprets the phrase "as such," SSCE is simply not included in the entities listed in the No Recourse Provision. Wedlake argues that SSCE's interest in Finance II is that of a "member" pursuant to the Companies Act and that if the No Recourse Provision meant to include SSCE in this role, it would have included "member" in the enumerated entities or specifically named SSCE. Wedlake also argues that SSCE cannot be an "other" equityholder because "the plain meaning of the term 'other equityholder' means any equityholder who may emerge at sometime in the future other than SSCE."  (Wedlake's Br. 19.)

Under New York law, a release or waiver need not identify released parties by name, but can release general categories of entities. See Wells v. Shearson Lehman/Am. Express, Inc., 526 N.E.2d 8, 14 (N.Y. 1988) ("New York law [does not] unvaryingly demand[] that every

discharged party be specifically named or identified."). As SSCE is the only entity with an ownership stake in Finance II, the No Recourse Provision unambiguously indentifies and includes SSCE in the equityholder category. Accordingly, the fact that the No Recourse Provision lists categories of released entities and does not explicitly name SSCE or members of Finance II is not dispositive.[10]

The Court is similarly unpersuaded by Wedlake's argument that the No Recourse Provision does not apply to SSCE because it is not an "other" equityholder, but a current equityholder. Wedlake recognizes that "other" is typically understood to mean "being the one or ones distinct from that or those first mentioned or implied." (Wedlake's Br. 19) (quoting Merriam-Webster's Collegiate Dictionary 878 (11th ed. 2006)). "Other equityholder" is found in the No Recourse Provision following partner or stockholder. The plain meaning of "other" in this context is to set equityholder apart from the two immediately preceding categories of equity interests, so as to include any and all potential equity interests within the protection of the provision. The Court does not find Wedlake's interpretation of "other" compelling. Moreover, it is beyond dispute that SSCE is an equityholder of Finance II and the Indenture and other offering documents repeatedly disclose this fact. See Indenture § 11.09. The Indenture's reference to other equityholders of Finance II therefore clearly includes SSCE.[11] Nat. Helicopter Corp. of Am. v. City of New York, 137 F.3d 81, 87 (2d Cir. 1998) (construing New York Law

---

[10]    Wedlake similarly argues that because the No Recourse Provision does not specifically list wind-up liabilities under Section 135 as a released claim, such liabilities are not released. The No Recourse Provision does not specifically refer to Section 135; however, it does include claims arising by statute. See Indenture § 11.09. There is no dispute that the Wind-Up Claim arises by virtue of statute. As a result, the Wind-Up Claim is clearly a type of claim addressed, and prohibited, by the No Recourse Provision.

[11]    As the Court has determined that SSCE is an equityholder of Finance II, the Court need not address whether SSCE is also a stockholder of Finance II.

18

and stating that "[a] release freely entered into that clearly waives a right to pursue a cause of action is binding.").

2. **The No Recourse Provision Releases SSCE as a Finance II Equityholder From Wind-Up Claim Liability, But Does Not Release the Guarantee Claim.**

Wedlake argues that the No Recourse Provision cannot be read to release SSCE as a Finance II equityholder without releasing SSCE as guarantor.  Wedlake recognizes that the Guarantee Claim is a contractual liability arising from SSCE's role as guarantor, but argues that such a contract claim arises by "rule of law."  Wedlake cites Simons v. Cogan, 549 A.2d 300 (Del. 1988) in support of this argument.  Simons, however, is distinguishable and does not assist Wedlake.

In Simons, a holder of convertible subordinated debentures brought a class action against an issuing corporation and its controlling shareholder alleging fraud, breach of the indenture, and breach of fiduciary duties.  549 A.2d at 301.  The Delaware Court of Chancery below dismissed all of the claims and specifically dismissed the indenture breach claims against the non-issuing company defendants due to a no recourse provision in the indenture.  Id.  The Delaware Supreme Court affirmed in all respects.  Id.  The no recourse provision at issue in Simons was almost identical to the Indenture's No Recourse Provision and provided that:

> No recourse shall be had [related to the notes] against any incorporator, or against any stockholder, officer or director, as such, . . . of the Company, . . . whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise . . .

Id. at 304 n.2.  The court stated that "[t]he meaning of the 'no recourse' provision is clear – it extends broad immunity to stockholders, directors and officers of the issuing corporation."  Id. at 305.  The court did not hold, however, that the contract-based breach of indenture claim was

impermissible because it was a claim arising by "rule of law."  Accordingly, <u>Simons</u> does not support Wedlake's argument.

Wedlake also cites <u>Finch v. Southside Lincoln-Mercury, Inc.</u>, 685 N.W.2d 154 (Wis. App. 2004) to support its argument that any release of the Wind-Up Claim necessarily releases the Guarantee Claim.  In <u>Finch</u>, a commercial real estate lessor asserted claims for breach of fiduciary duty, tortious contractual interference, and fraudulent transfer against the defaulting commercial lessee, its directors, and its majority shareholder.  685 N.W.2d at 157.  The trial court below dismissed all claims against the lessee's directors and its majority shareholder based on a no recourse provision in the relevant lease and the appellate court affirmed in part and reversed in part.  <u>Id.</u>  The no recourse provision at issue precluded "recourse . . . against any . . . stockholder . . .  [or] director [of the lessee] for payment of the rent, or performance of any other obligations of [the lessee], or for any claim based on, or otherwise in respect of, this Lease . . . whether by virtue of any constitution, statute or rule of law."  <u>Id.</u> at 161 (internal quotations removed).

In discussing the no recourse provision, the <u>Finch</u> court stated that the effect of the no recourse provision was to "negate any potential claim that . . . the principal shareholder of [the lessee], or any director of [the lessee], had either explicitly or implicitly guaranteed [the lessee's] obligations under the lease."  <u>Id.</u> at 161.  Wedlake construes this language to stand for the proposition that no recourse provisions release guarantee claims as a matter of course. (Wedlake's Resp. Br. 21-22.)  The quoted statement, however, is <u>dicta</u> because the presence of a guarantee by the lessee's majority shareholder was not under consideration in the case.  The court appears to have used the term "guarantee" as a short-hand for third-party liability on account of the lessee's obligations.  Indeed, the lease at issue in <u>Finch</u> does not appear to have

included any type of guarantee by the lessee's majority shareholder or directors. In contrast, SSCE provided an explicit guarantee of Finance II's obligations under the Notes, thereby creating a distinct contractual obligation of SSCE separate and apart from any obligations SSCE may have had by virtue of its status as Finance II's sole member. Accordingly, <u>Finch</u> is distinguishable.

In addition, the plain meaning of "rule of law" does not support Wedlake's argument. To ascertain the plain meaning of a phrase, courts commonly look to dictionaries. <u>See</u> <u>Bianco</u>, 830 N.Y.S.2d at 23. The Oxford English Dictionary defines "rule of law" as "a valid legal proposition." 14 <u>Oxford English Dictionary</u> 228 (2d ed. 2004). Black's Law Dictionary similarly defines "rule of law" as a "substantive legal principle." <u>Black's Law Dictionary</u> 1448 (9th ed. 2009).

The Guarantee Claim does not arise from a legal proposition or principle, but rather from specifically negotiated contractual provisions. The plain language of the Indenture and the general structure of the transaction supports the Debtors' argument that SSCE's guarantee liabilities under the Indenture are separate and apart from SSCE's potential liabilities as Finance II's sole member. <u>See Eighth Ave. Coach Corp. v. City of New York</u>, 35 N.E.2d 907, 909 (N.Y. 1941) ("[A] contract must be read as a whole in order to determine its purpose and intent, and single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part.").

Accordingly, the application of the No Recourse Provision to SSCE's liabilities as a member of Finance II does not vitiate SSCE's distinct contractual liabilities in its separate role as guarantor under the Indenture Notes. Put another way, the Guarantee Claim is not a claim

against SSCE in its role as a Finance II equityholder; therefore, the Guarantee Claim is not affected by the No Recourse Provision.[12]

    **3.**    **Wedlake and M&T's Additional Arguments as to Why the No Recourse Provision Does Not Apply to SSCE are Unpersuasive.**

Wedlake and M&T offer several additional arguments to persuade the Court that the No Recourse Provision should not bar the Wind-Up Claim. These arguments are based primarily on Wedlake and M&T's perceptions of certain commercial aspects of the Indenture, the Notes, and Finance II's corporate structure. The Court does not find these arguments persuasive, particularly in light of the unambiguous language of the Indenture.

First, the Court rejects Wedlake's argument that applying the No Recourse Provision to SSCE's wind-up liabilities under the Companies Act eviscerates the commercial purpose of Finance II's ULC structure. Wedlake provides no support for its argument that the elimination of SSCE's wind-up liability "jeopardizes the preferred tax treatment that was the basis of the entire transaction from inception." (See Wedlake's Br. 14.) The Debtors counter by arguing that the tax advantages related to the ULC corporate form are not lost upon the limitation of an ULC's member's wind-up liability. The Debtors state that the "ULC tax structure simply requires that Finance II be a ULC entity [and] [t]here is no separate requirement that SSCE be obligated for Finance II's debts." (Debtors' Br. 23.) Wedlake has provided no evidence or case law to the contrary.[13]

Second, Wedlake argues that the No Recourse Provision only bars claims by the Indenture Trustee or the Noteholders and not claims by Finance II or its representative.

---

[12]    This result is wholly consistent with the Court's foregoing plain reading of the No Recourse Provision and construction of the phrase "as such."

[13]    The Court takes no position and makes no findings as to issues of U.S. or Canadian tax law and compliance therewith by SSCE, Finance II, or any other entity.

(Wedlake's Br. 25.)  The Court rejects this argument based on the undisputed fact that Finance II

is a party to the Indenture and agreed to the No Recourse Provision, which does not merely

prohibit claims brought by the Indenture Trustee, but applies to any claim based on the Notes or

Indenture.  See Indenture § 11.09.  As Finance II's estate representative and for purposes of this

dispute, Wedlake stands in the shoes of Finance II.  Additionally, Section 135(f) of the

Companies Act specifically states that "nothing in this Act shall invalidate any provision

contained in any contract whereby the liability of the individual members of the contract is

restricted, or whereby the funds of the company are alone made liable in respect of the policy or

contract."  Companies Act § 135(f).  This statutory provision does not limit how parties are able

to circumscribe the wind-up liabilities of ULC members, but broadly allows contract parties to

waive wind-up liabilities.  New York law similarly also allows contract parties to waive private

statutory rights.  Snook, 471 N.Y.S.2d at 977.

Third, M&T, as Indenture Trustee, argues that the no recourse provisions in Note and

Indenture conflict and should therefore be construed against the issuer.[14]  Although the Court

acknowledges that the no recourse provisions in the documents are not identical, the Court does

not agree that the provisions are in conflict or work at cross purposes.  The provision in the

Indenture is more specific than the Notes' provision, but both provide a broad release of liability

related to the Notes for Finance II equityholders.[15]  The fact that the Indenture provides examples

---

[14]    Although M&T has framed its argument in this manner, it is more accurate to say that
M&T desires that the Court construe the allegedly conflicting provisions against the issuer's
parent company, SSCE.

[15]    The Note's no recourse provision states:

No incorporator or any past, present or future partner, stockholder, other
equityholder, officer, director, employee or controlling person, as such, of
[Finance II] or [SSCE] . . . shall have any liability for any obligations of [Finance
II] or [SSCE] under the Notes, the Parent Guarantee or the Indenture of for any

of the types of liability released does not demonstrate a conflict when the general intent of the provisions is consistent.

Moreover, the Notes specifically state that "[t]he terms of the Note include those stated in the Indenture . . . [and] [t]he Notes are subject to all such terms.  To the extent permitted by applicable law, in the event of any inconsistency between the terms of this Note and the terms of the Indenture, the terms of the Indenture control."  Notes § 5.  The Noteholders were therefore on notice that the Indenture was the operative document in the event of a conflict, which the Court has determined does not exist here.  See Broad v. Rockwell Int'l Corp., 642 F.2d 929, 948 n.21 (5th Cir. 1981) (disregarding plaintiff's argument that, instead of solely looking to an indenture, the court should consider the language of the debt instruments or related offering documents where "those documents specifically and repeatedly incorporate the [i]ndenture by reference, and warn the investor that the contractual obligations and rights that attend the [debt instruments] are governed solely by the Indenture.").

In addition, both provisions state that the waiver and release are part of the consideration for the transaction.  See Indenture § 11.09, Notes §17.  The Noteholders agreed to the terms of

---

claim based on, in respect of or by reason of, such obligations or their creation. Note § 17.

The relevant portion of the Indenture's No Recourse Provision states:
> No recourse for the payment of . . . the Notes, or for any claim based thereon . . . shall be had against any incorporator or against any past, present or future partner, stockholder, other equityholder, officer, director, employee or controlling person, as such, of [Finance II], [or] [SSCE] . . . whether by virtue of any constitution, statute or rule of law, or by the enforcement of any assessment or penalty or otherwise.
Indenture § 11.09.

the Notes and the Indenture when purchasing the Notes, thereby agreeing to the limitations of their rights contained in the no recourse provisions of both documents.[16]

Finally, neither Wedlake nor the Indenture Trustee has cited case law indicating that New York law requires a court to look solely to a note provision, instead of a similar indenture provision, when the note indicates that the indenture controls and there is no genuine conflict between the documents.  Here, the no recourse provisions in both documents are unambiguous waivers of any right to pursue SSCE in its capacity as an equityholder of Finance II for Finance II's obligations under the Notes.

## V.  <u>CONCLUSION</u>

In sum, the Debtors have rebutted the <u>prima facie</u> validity of the Wind-Up Claim by showing that Wedlake is barred from asserting claims against SSCE based on the Indenture and Notes.  Wedlake has not presented its claim with sufficient evidence demonstrating an entitlement to payment.  <u>See Allegheny</u>, 954 F.2d at 173-74.  Based on the foregoing, the Court will sustain the Objection and deny the Wind-Up Claim as provided herein.[17]  An appropriate Order follows.

By the Court,

_____
Dated: January 10, 2011          BRENDAN LINEHAN SHANNON
        Wilmington, Delaware      UNITED STATES BANKRUPTCY JUDGE

---

[16]    The Court's consideration of the Notes' no recourse provision in this context should not be understood to undermine or limit the Court's earlier determination that the No Recourse Provision is unambiguous and reference to additional documents is unnecessary.  Rather, the Court refers to the Notes' provisions here to explain its disagreement with M&T's position.

[17]    As the Court has determined that the Wind-Up Claim should be disallowed pursuant to the plain language of the No Recourse Provision, the Court need not determine and does not address whether the Wind-Up Claim should be disallowed as duplicative of the Guarantee Claim.